**J.S. and C.S., Husband and Wife, M.S., A Minor and J.S., A Minor by and Through Their Parents J.S. and C.S., Appellees,**

v.

**Harlan S. WHETZEL, Jr., Appellee.**

**Appeal of Perry A. EAGLE, M.D., Appellant.**

Superior Court of Pennsylvania.

Argued May 18, 2004.

Filed Oct. 20, 2004.

Susan V. Metcalfe, Harrisburg and Curtis N. Stambaugh, York, for appellant.

Girard E. Rickards, Camp Hill, for Whetzel, appellee.

Before: DEL SOLE, P.J., KELLY, and CAVANAUGH,* JJ.

OPINION BY KELLY, J.:

¶ 1 Appellant, Perry A. Eagle, M.D. ("Dr. Eagle"), asks us to review the order entered in the York County Court of Common Pleas denying his motion for a protective order to shield his 1099 forms from discovery. We are asked to determine, *inter alia*, whether a party may obtain discovery of all sources and amounts of income received by the opposing party's expert witness. We hold that while a party may impeach an expert witness by examining his relationship with the counsel calling him and any previous participation in certain types of litigation, this inquiry must nevertheless be relevant to the main issue before the court. Because the court

in the present case permitted production of Dr. Eagle's income documents that are unrelated to the current litigation, we vacate the order and remand for further proceedings.

¶ 2 The relevant facts and procedural history of this case are as follows. J.S., C.S., and their children, M.S. and J.S. ("Plaintiffs"), are the plaintiffs in the underlying personal injury action which arose from an automobile accident[1] with Harlan S. Whetzel ("Mr. Whetzel"), the defendant. Mr. Whetzel retained Dr. Eagle, an orthopedic surgeon, as an expert witness, and in December 2000, Dr. Eagle performed a medical examination on J.S. In May 2003, Plaintiffs served interrogatories on Dr. Eagle and requested certain financial information, including his 1099 tax forms[2] from 1999 to 2002 from any insurance company and/or attorney. Plaintiffs sought this information to impeach Dr. Eagle on an alleged bias for Mr. Whetzel's counsel and defendants generally. In response, Dr. Eagle provided a letter stating he had testified as an expert witness in 74 cases. Dr. Eagle estimated he was the treating physician in 7 of those cases and was not the treating physician in the remaining 67 cases. (Dr. Eagle's Letter, dated April 18, 2002; R.R. at 16).

¶ 3 In July 2003, Plaintiffs filed a motion to compel Dr. Eagle's answer to the interrogatories. The trial court heard oral arguments in motions court and directed the parties to submit written briefs. In August 2003, the trial court granted in part

---

* Judge Cavanaugh did not participate in this decision.

1. J.S., M.S., and J.S. were passengers in an automobile owned and operated by an unrelated party at the time of the accident. Mr. Whetzel was the driver of the other vehicle in the accident. In February 2002, the trial court approved a settlement between M.S., J.S., and Mr. Whetzel. Currently, J.S. (Husband) pursues a claim for negligence and punitive damages; C.S. (Wife) seeks a claim for loss of consortium and punitive damages.

2. A federal tax form 1099 reports miscellaneous income for individuals and companies who have been paid $600 or more in nonemployee service payments during a calendar year.

and denied in part Plaintiffs' motion to compel. In its order, the court directed Dr. Eagle to produce his 1099 tax forms from 1999 through 2002 from any insurance company and attorney. The court denied Plaintiffs' request as to the remaining interrogatories. In September 2003, Dr. Eagle filed a motion for a protective order to shield his 1099 forms from discovery. In the alternative, he offered to provide only the 1099 forms relevant to Mr. Whetzel's counsel and insurance company, and to prohibit disclosure except to the extent admitted at trial. The trial court denied Dr. Eagle's motion, and Dr. Eagle filed a timely notice of appeal on October 24, 2003. Dr. Eagle also filed an application to stay discovery of his financial records pending appeal.

¶ 4 In December 2003, Plaintiffs filed a motion for sanctions against Dr. Eagle, alleging he failed to comply with the August 2003 order. In January 2004, the trial court entered an order directing that Dr. Eagle would be excluded from testifying at trial as an expert so long as he refused to provide the requested discovery.

¶ 5 Dr. Eagle raises the following issues for our review:

WHETHER THE FINANCIAL RECORDS OF A NON–PARTY EXPERT WITNESS ARE DISCOVERABLE WHERE: (1) PA.R.C.P. 4003.5(A)(1) LIMITS THE SCOPE OF EXPERT DISCOVERY TO THE SUBSTANCE OF THE EXPERT'S OPINIONS AND GROUNDS THEREFORE; AND (II) THE [PLAINTIFFS], AS A MATTER OF LAW, HAVE NOT SHOWN CAUSE FOR ADDITIONAL EXPERT DISCOVERY UNDER PA.R.C.P. 4003.5(A)(2)?

WHETHER THE DISCOVERY REQUESTS SEEKING THE FINANCIAL RECORDS OF A NON–PARTY EXPERT WITNESS ARE REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE WHERE EVIDENCE CONCERNING PAYMENTS MADE TO AN EXPERT WITNESS BY PERSONS OR FIRMS ENTIRELY UNRELATED TO THE PARTIES IS BEYOND THE SCOPE OF PERMISSIBLE CROSS–EXAMINATION?

(Dr. Eagle's Brief at 2).

■■■ ¶ 6 Before we address the merits of Dr. Eagle's issues, we must first determine whether this appeal is properly before us as a collateral issue.

An appeal may be taken only from a final order unless otherwise permitted by statute or rule. A final order is ordinarily one which ends the litigation or disposes of the entire case; however, "[a]n appeal may be taken as of right from a collateral order of an administrative agency or lower court." Pa.R.A.P. 313(a).

*Ben v. Schwartz*, 556 Pa. 475, 481, 729 A.2d 547, 550 (1999). For an order to be collateral, and thus appealable, it must include the three factors defined in Rule 313(b): (1) the order is separable from the main cause of action; (2) the right involved is too important to be denied review; and (3) the claim would be irreparably lost if review is postponed. *See Schwartz, supra;* Pa.R.A.P. 313(b).

■■■ ¶ 7 This "collateral order doctrine [3] is a specialized, practical application

---

**3.** "The phrase collateral order doctrine is used because the statute is the codification of case law, and therefore derives its commonly used name from case law which preexisted the collateral order statute, which was enacted in 1992." *Melvin v. Doe,* 575 Pa. 264, n. 5, 836 A.2d 42, 45, n. 5 (2003).

of the general rule that only final orders are appealable as of right." *Melvin v. Doe*, 575 Pa. 264, 272, 836 A.2d 42, 46–47 (2003). Rule 313 must be interpreted narrowly, and each of the above prongs must be clearly present for an order to be considered collateral. *Id.* The first prong is established by finding the issue surrounding the disputed order may be addressed without analyzing the ultimate issue in the underlying case.[4] *Dibble v. Penn State Geisinger Clinic, Inc.*, 806 A.2d 866, 869–70 (Pa.Super.2002), *appeal denied*, 573 Pa. 666, 820 A.2d 705 (2003). As for the second prong, "it is not sufficient that the issue be important to the particular parties." *Geniviva v. Frisk*, 555 Pa. 589, 598, 725 A.2d 1209, 1213–14 (1999). Instead, the issue "must involve rights deeply rooted in public policy going beyond the particular litigation at hand." *Id.* A court may conduct a balancing test between the nature of the potentially unprotected right and the efficiency interest of the final judgment rule. *Dibble, supra* at 869–70 (citing *Ben, supra*).

¶ 8 Instantly, the August 2003 order from which Dr. Eagle appeals denied him protection of his 1099 forms. The admissibility of Dr. Eagle's 1099 forms, whether on procedural or evidentiary grounds, may be addressed without analyzing Mr. Whetzel's alleged negligence in the automobile accident. *See Ben, supra.* Thus, the issue of discovering Dr. Eagle's 1099 forms is separate from the merits of Plaintiffs' personal injury action. *See id.* Turning to the second prong, we note the current order requires Dr. Eagle to submit every 1099 form he received from any insurance company and/or attorney from 1999 through 2002. We agree Dr. Eagle's pri-

vacy interest in his income information raises a sufficiently important public policy concern. Finally, we note the instant order requires Dr. Eagle to immediately produce the requested 1099 income information. Any privacy interest Dr. Eagle may have in the 1099 forms will be irreparably violated if he complies with the order and produces the documents. Thus, the third prong of irreparable loss of claim is met. Accordingly, we conclude the present trial court order is a collateral order from which Dr. Eagle properly appeals. *See Ben, supra.*

■ ¶ 9 We now address Plaintiffs' argument that Dr. Eagle's appeal is moot because the parties have agreed not to call Dr. Eagle as an expert witness at trial, nor use his medical examination report of J.S. in any way. Dr. Eagle disputes Plaintiffs' contention and claims the parties have not agreed to exclude him as a witness. Dr. Eagle contests certain letters from Plaintiffs' attorney to Mr. Whetzel's counsel that purport to memorialize such an oral agreement. Dr. Eagle contends his appeal is not moot because circumstances which would render this issue moot do not exist. Dr. Eagle maintains the trial court's January 2004 order, which commanded him to either provide his 1099 forms or withdraw from the case as an expert, was a mere reinforcement of the court's August 2003 order denying his motion for protective order. Dr. Eagle avers the January 2004 order does not resolve the issue of whether his 1099 forms are discoverable, and emphasizes his appeal from the August 2003 denial of his motion for protective order is still pending.

4. Our Supreme Court adopted this practical application of the separability concept from the federal Third Circuit case *In re Ford Motor Co.*, 110 F.3d 954 (3d Cir.1997), and rejected the previously employed *Cohen* doc-trine, which found separability when the disputed order did not relate in any way to the merits of the underlying action. *Ben, supra* at 483, 729 A.2d at 551–52.

¶ 10 It is a well-established principle of law that moot questions will not be reviewed. *Pap's A.M. v. City of Erie,* 571 Pa. 375, 389, 812 A.2d 591, 599 (2002). The Pennsylvania Supreme Court summarized the mootness doctrine as follows:

> The cases presenting mootness problems involve litigants who clearly had standing to sue at the outset of the litigation. The problems arise from events occurring after the lawsuit has gotten under way—changes in the facts or in the law—which allegedly deprive the litigant of the necessary stake in the outcome.

*In re Gross,* 476 Pa. 203, 209, 382 A.2d 116, 119 (1978). Moreover, this Court has stated:

> Generally, an actual claim or controversy must be present at all stages of the judicial process for the case to be actionable or reviewable.... If events occur to eliminate the claim or controversy at any stage in the process, the case becomes moot.

*In re Duran,* 769 A.2d 497, 502 (Pa.Super.2001) (citations omitted). An issue can become moot during the pendency of an appeal. *In re Cain,* 527 Pa. 260, 263, 590 A.2d 291, 292 (1991).

¶ 11 Instantly, the record reveals Dr. Eagle remains bound by the trial court's August 2003 order, the appeal from which is currently before this Court. The trial court's January 2004 order does not relieve Dr. Eagle from the demands of the August 2003 order. There is not sufficient evidence to support Plaintiffs' claim the parties have mutually and independently agreed not to call Dr. Eagle as a witness. Absent any evidence of a valid agreement between the parties to exclude Dr. Eagle as a witness, we agree with Dr. Eagle. Thus, we determine there are no intervening circumstances that would change the underlying facts of this appeal. We also note there has been no intervening change in the applicable law. Accordingly, we conclude this appeal is not moot. *See In re Duran, supra.*

¶ 12 Next, Dr. Eagle argues Pennsylvania Rules of Civil Procedure Rule 4003.5(a)(1) limits discovery of an expert witness to the facts and opinions to which he will testify, and the bases for those facts and opinions. Dr. Eagle avers his 1099 forms are not related to the facts and opinions on which he planned to testify at trial. Dr. Eagle also claims Plaintiffs have failed to show cause for supplemental discovery as required under Rule 4003.5(a)(2). We disagree.

¶ 13 The scope of permissible discovery of any witness, lay or expert, is defined by Rule 4003.1(a):

> **Rule 4003.1. Scope of Discovery Generally. Opinions and Contentions.**
>
> (a) Subject to the provisions of Rules 4003.2 to 4003.5 inclusive and Rule 4011, **a party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party,** including the existence, description, nature, content, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.
>
> (b) It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
>
> (c) Except as otherwise provided by these rules, it is not ground for objection that the information sought involves an

opinion or contention that relates to a fact or the application of law to fact. Pa.R.C.P. 4003.1 (emphasis added). Rule 4003.5(a) states:

**Rule 4003.5. Discovery of Expert Testimony. Trial Preparation Material.**

(a) Discovery of facts known and opinions held by an expert, otherwise discoverable under the provisions of Rule 4003.1 and acquired or developed in anticipation of litigation or for trial, **may be obtained as follows:**

(1) A party may through interrogatories require

(a) any other party to identify each person whom the other party expected to call as an expert witness at trial and to state the subject matter on which the expert is expected to testify and

(b) The other party to have each expert so identified state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. The party answering the interrogatories may file as his or her answer a report of the expert or have the interrogatories answered by the expert. The answer or separate report shall be signed by the expert.

(2) **Upon cause shown, the court may order further discovery by other means,** subject to such restrictions as to scope and such provisions concerning fees and expenses as the court may deem appropriate.

Pa.R.C.P. 4003.5(a)(1), (2) (emphasis added).

¶ 14 Rule 4003.5 limits discovery of an expert witness to information "acquired or developed in anticipation of litigation." *Neal by Neal v. Lu*, 365 Pa.Super. 464, 530 A.2d 103, 106 (1987). However, it does not limit discovery to the facts and opinions upon which the expert is expected to testify. Rather, Rule 4003.5 states that discoverable facts and opinions, otherwise permissible under Rule 4003.1, may be obtained through interrogatories. Pa.R.C.P. 4003.5(a)(1). A court may order discovery by other means, but only upon cause shown. Pa.R.C.P. 4003.5(a)(2). Thus, Dr. Eagle's argument that Rule 4003.5(a)(1) limits discovery of an expert witness to opinions and facts related thereto is without merit. The focus of Rule 4003.5(a) is the means by which a party may obtain discovery from an expert witness. Its reference to the permissible scope of discovery under Rule 4003.1 does not modify the meaning of Rule 4003.1.

¶ 15 Moreover, Dr. Eagle's reliance on Rule 4003.5(a)(2) in claiming supplementary discovery is only permitted upon cause shown is erroneous. Rule 4003.5 refers to the authority of a court to order discovery by means other than interrogatories. We conclude Rule 4003.5 does not limit discovery of an expert witness in the manner advanced by Dr. Eagle, and Plaintiffs' interrogatory for Dr. Eagle's 1099 forms does not violate that rule.

¶ 16 Next, Dr. Eagle argues Plaintiffs' discovery request is not reasonably calculated to lead to the discovery of admissible evidence pursuant to Rule 4003.1. Dr. Eagle avers the requested 1099 forms would disclose payments he received from persons or law firms unrelated to the parties in the instant underlying case. Dr. Eagle also claims these documents would reveal his medical treatment of patients not related to any litigation in which he may have participated. Dr. Eagle maintains the scope of cross-examination of an expert witness' finances is limited to information that would establish bias in favor of the counsel retaining the witness. We agree, in part.

¶ 17 Impeachment of an expert witness by demonstrating partiality is permissible. *Smith v. Celotex Corp.*, 387 Pa.Super. 340, 564 A.2d 209, 214 (1989) (citing *Grutski v. Kline*, 352 Pa. 401, 43 A.2d 142 (1945)). It is proper to ask an expert witness his fee for testifying, as well as whether he has a personal friendship with the party or counsel calling him. *Id.; Mohn v. Hahnemann Medical College and Hosp.*, 357 Pa.Super. 173, 515 A.2d 920 (1986). The extent of such cross-examination is within the sound discretion of the trial court. *Smith, supra.* However, the extent to which a party may cross-examine an expert witness on his financial records is limited. In *Mohn, supra*, this Court disallowed the trial court's unrestricted admission of a medical expert's financial records that revealed payments received from any source, including payments received for medical treatment unrelated to any litigation activity. *Id.* at 922–23. This Court held the field of inquiry is not unbridled; it must be limited to questions relevant to a witness' credibility. *Id.* at 924. There is a point beyond which inquiry is prejudicial and too intrusive, and serves only to divert the case into collateral matters. *Id.* This Court explained:

> [The expert witness] should be required to "lift his visor so that the jury could see who he was, what he represented, and what interest, if any, he had in the **results of the trial**, so that the jury could appraise his credibility." However, we do not think this encompasses the emptying of one's pockets and turning them inside out so that one's financial worth can be open to scrutiny.

*Id.* (citing *Goodis v. Gimbel Brothers*, 420 Pa. 439, 445, 218 A.2d 574, 577 (1966)) (emphasis in original).

¶ 18 In *Smith, supra*, this Court upheld the cross-examination of an expert on his involvement in asbestos cases on behalf of the party calling him, and to the particular fees generated from these cases. *Smith, supra* at 214. This Court concluded the information was relevant to whether the expert was biased in favor of asbestos defendants. *Id.* The *Smith* Court distinguished *Mohn, supra* by noting the broad request of information in *Mohn* "was totally irrelevant to showing such bias or prejudice." *Smith, supra* at 214–15. In *Tiburzio–Kelly v. Montgomery*, 452 Pa.Super. 158, 681 A.2d 757 (1996),[5] this Court held evidence of an ongoing professional relationship between an expert witness and defense counsel that went beyond the case at hand was admissible to show bias.

¶ 19 In *Coward v. Owens–Corning Fiberglas Corp.*, 729 A.2d 614, 627 (Pa.Super.1999), this Court allowed inquiry concerning an expert witness' previous fees received from other defendants in asbestos litigation. We stated that examination of an expert's bias for a particular law firm and certain parties in industry-wide litigation was proper, but noted the cross-examination was limited to fees received for testifying for asbestos defendants. *Id.* at 626. We also highlighted that the plaintiff's attorney specifically asked the expert whether this previous compensation influenced his opinion in the case at issue. *Id.* This Court emphasized the ruling in *Mohn, supra*, which prohibited inquiries "calculated to impugn the expert's character, painting him as a 'hired gun who peddles his expertise randomly and generates a large amount of revenue in the process.'" *Coward, supra* at 626 (citing *Mohn, supra* at 924).

**5.** Superceded by statute on other grounds. *See Haddad v. Gopal,* 787 A.2d 975 (Pa.Super.2001).

¶ 20 In summary, this Court has consistently permitted a party to examine an expert witness' relationship with the counsel calling the expert, including the history and amount of compensation received by the expert from counsel. This Court has also upheld inquiries about the amount of income an expert has received from testifying in a particular type of case (for example, asbestos cases or personal injury cases), and whether the expert consistently represents one side or the other; *i.e.*, plaintiff or defendant. Nevertheless, at all times, this Court has made clear the information sought must be relevant to the inquiry presently before the court. We have cut short those lines of inquiry that either impugn an expert's character or are otherwise unrelated to the issue or issues on which the expert is offering his or her opinion.

¶ 21 In the instant case, the trial court ordered Dr. Eagle to produce **all** 1099 forms received from **any** insurance company or attorney from 1999 through 2002. We agree with the trial court that Dr. Eagle must produce the 1099 forms related to his services for Mr. Whetzel's counsel, in this and other cases. *See Smith, supra; Mohn, supra.* This information addresses any potential bias Dr. Eagle might have toward Mr. Whetzel's counsel. *See Mohn, supra.* Additionally, Dr. Eagle must produce those 1099 forms related to his services for insurance companies or attorneys in personal injury cases. This information is relevant to examine any potential bias Dr. Eagle might have in favor of personal injury plaintiffs or defendants. *See Coward, supra.* However, the court erred to the extent it permitted unfettered production of **any** and **all** of Dr. Eagle's 1099 forms. *See Mohn, supra.* Some of these documents may contain payments from insurance companies or other sources where no litigation was involved, or payments by attorneys in cases unrelated to personal injury. *See id.*

¶ 22 For the foregoing reasons, we hold a party may impeach an expert witness by examining his relationship with the counsel calling him and any previous participation in certain types of litigation, so long as this inquiry is relevant to the main issue before a court. Because the trial court permitted production of 1099 forms that are unrelated to this litigation, we vacate the order denying Dr. Eagle's motion for a protective order. We remand to the trial court to enter an order protecting from discovery those 1099 forms that are unrelated to this case. We note the court may need to conduct additional inquiry to determine which 1099 forms are relevant.

¶ 23 Order vacated, case remanded for further proceedings consistent with this opinion. Jurisdiction is relinquished.