J-A31040-14

2015 PA Super 50

| | |
|---|---|
| HOWARD FLENKE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| RICHARD B. HUNTINGTON | |
| Appellee | No. 467 MDA 2014 |

Appeal from the Judgment Entered April 14, 2014
In the Court of Common Pleas of York County
Civil Division at No: 2011-SU-000997-69

BEFORE:  BOWES, OTT, and STABILE, JJ.

OPINION BY STABILE, J.:                    **FILED MARCH 17, 2015**

Appellant, Howard Flenke, appeals from the April 14, 2014 judgment entered in favor of Appellee, Richard B. Huntington.  We affirm.

This personal injury action arose from an April 14, 2009 automobile accident.  Appellee stipulated that he was negligent and that his negligence was a factual cause of Appellant's injuries.  Thus, the parties devoted their efforts at trial primarily to establishing Appellant's damages.  The parties' expert witnesses offered competing views of the extent of Appellant's physical injuries, and the relationship between those injuries and the accident.  Appellant's expert testified that the accident caused significant spinal injuries to Appellant requiring several types of surgery.  Those surgeries, according to Appellant's expert, would cost approximately $75,000.  Appellee's expert, Dr. Daniel P. Hely ("Dr. Hely"), testified that

Appellant suffered only strained muscles or sprained ligaments in his neck and back. Dr. Hely attributed Appellant's spinal condition to degenerative arthritis. A jury awarded Appellant $30,000 after a three-day trial.

Appellant filed an unsuccessful motion for a new trial followed by this timely appeal. He argues the trial court improperly excluded portions of his videotaped deposition from the jury. Specifically, Appellant argues the trial court erred in sustaining defense objections to lines of questioning probing: (1) Dr. Hely's earnings as a "defense industry expert;" (2) Dr. Hely's perception that his various employers will not ask him to evaluate people who are seriously injured; (3) the amount of money Dr. Hely has received from the insurance company providing Appellee's defense in this case, which is allegedly more than Dr. Hely has received from any other insurance company; and (4) the diagnoses and prognoses Dr. Hely issued in his fifty most recent expert opinions. Appellant's Brief at 5-7. Appellant also argues the trial court erred in preventing Appellant from introducing evidence that his first party insurance carrier provided benefits in connection with the accident. *Id.* at 6.

We begin with our standard of review. Trial courts have broad discretion to grant or deny a new trial. *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1121 (Pa. 2000). We review the trial court's decision for abuse of discretion. *Id.* at 1122.

> There is a two-step process that a trial court must follow when responding to a request for new trial. First, the trial court

must decide whether one or more mistakes occurred at trial. These mistakes might involve factual, legal, or discretionary matters. Second, if the trial court concludes that a mistake (or mistakes) occurred, it must determine whether the mistake was a sufficient basis for granting a new trial. The harmless error doctrine underlies every decision to grant or deny a new trial. A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake.

To review the two-step process of the trial court for granting or denying a new trial, the appellate court must also undertake a dual-pronged analysis. A review of a denial of a new trial requires the same analysis as a review of a grant. First, the appellate court must examine the decision of the trial court that a mistake occurred.

At this first stage, the appellate court must apply the correct scope of review, based on the rationale given by the trial court. There are two possible scopes of review to apply when appellate courts are determining the propriety of an order granting or denying a new trial. There is a narrow scope of review: where the trial court articulates a single mistake (or a finite set of mistakes), the appellate court's review is limited in scope to the stated reason, and the appellate court must review that reason under the appropriate standard.

[Conversely,] if the trial court leaves open the possibility that reasons additional to those specifically mentioned might warrant a new trial, or orders a new trial 'in the interests of justice,' the appellate court applies a broad scope of review, examining the entire record for any reason sufficient to justify a new trial.

*Id.* at 1122-23.

Instantly, the trial court reviewed Appellant's assertion of errors and concluded no error occurred and no new trial was warranted. Appellant's argument focuses solely on the assertions of error listed above, each of

which involves an evidentiary ruling. We will confine our analysis accordingly.

We review a trial court's evidentiary rulings for abuse of discretion. **Stumpf v. Nye**, 950 A.2d 1032, 1035-36 (Pa. Super. 2008). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." **Id.** at 1036. An erroneous evidentiary ruling does not warrant a new trial unless it was "harmful or prejudicial to the complaining party." **Id.**

Pennsylvania law permits impeachment of expert witnesses by demonstrating their partiality. **Smith v. Celotex Corp.**, 564 A.2d 209, 214 (Pa. Super. 1989) (citing **Mohn v. Hahnemann Med. Coll. and Hosp.**, 515 A.2d 920, 923-24 (Pa. Super. 1986)). To that end, Pennsylvania jurisprudence permits parties to take discovery[1] regarding an expert witness's potential biases and financial incentives. **Cooper v. Schoffstall**, 905 A.2d 482, 494-95 (Pa. 2006). The Supreme Court observed:

> On the one hand, [the plaintiff] has an interest in the availability of some reasonable opportunity to inquire into the issue of potential favoritism, in light of the information that she has already assembled concerning [the defense expert's]

_____

[1]   We are cognizant that the **Cooper** opinion speaks to discoverable evidence rather than evidence admissible at trial. We nonetheless find the principles quoted here instructive.

- 4 -

medicolegal experience developed at the behest of defense attorneys and/or the insurance industry. [The defense expert], on the other hand, maintains an interest in being free from unduly intrusive and burdensome litigation obligations. Additionally, we are cognizant of the broader concern with a potential chilling effect to which [the defense expert], and some courts, have referred.

*Id.* at 494. Thus, plaintiffs are permitted to discover evidence that would "support a reasonable inference that the witness might color, shade, or slant his testimony in light of the substantial financial incentives." *Id.* at 495. Said another way, an expert witness in an appropriate case "should be required to lift his visor so that the jury could see who he was, what he represented, and what interest, if any, he had in the *results of the trial*, so that the jury could appraise his credibility." *Mohn*, 515 A.2d at 924 (emphasis in original). These principles are deeply rooted in our jurisprudence. *See, e.g. Fleishman v. Reading*, 130 A.2d 429, 434 (Pa. 1957) ("An insurance company is not sacrosanct. It has an interest in a lawsuit in which it may be called upon to pay all or at least a part of a judgment if against the insured. That such interest may at times cause those who represent it to offend against the proprieties is not without the bounds of reason.").

In any event, the key issue, as stated in *Mohn*, is the expert's credibility. Thus, we have observed that a point exists "beyond which inquiry is prejudicial and too intrusive, and serves only to divert the case

- 5 -

into collateral matters." ***J.S. v. Whetzel***, 860 A.2d 1112, 1120 (Pa. Super. 2004).

Dr. Hely testified by videotaped deposition.[2] As described above, defense counsel lodged objections to questions probing Dr. Hely's financial incentives and biases, and Appellant now argues the trial court erred in excluding evidence from the jury based on those objections.[3] Appellant further argues the trial court's rulings were erroneous and prejudicial. For context, we will summarize relevant portions of Dr. Hely's testimony that the trial court admitted into evidence. Dr. Hely admitted he never treated Appellant, and that his one meeting with Appellant lasted only thirty minutes. N.T. Deposition, 1/16/14, at 25, 27. He further admitted he was hired to provide an opinion to be used in this litigation, and that he was paid for his time. ***Id.*** at 26, 38-39. Dr. Hely agreed that he earned substantial income providing reports to be used in litigation, including $73,990 for examination and $40,500 for depositions in 2010, $157,040 for examinations and $18,250 for depositions in 2011, and $111,800 for examinations and $43,900 for depositions in 2012. ***Id.*** at 39-40, 42.

_____

[2] Appellant cross-examined Dr. Hely based on discovery documents Appellant obtained pursuant to our Supreme Court's opinion in ***Cooper v. Schoffstall***, 905 A.2d 482 (Pa. 2006).

[3] The trial court addressed the admissibility of the disputed portions of Dr. Hely's testimony after hearing argument at trial prior to playing Dr. Hely's deposition for the jury. The trial court sustained all objections Appellee raised during the deposition. N.T. Trial, 1/21-24/14, at 93-109.

Approximately 85 to 90 percent of Dr. Hely's expert reports are issued on behalf of defense attorneys. *Id.* at 41, 109. Dr. Hely admitted he would be less likely to be rehired as an expert if he issued a report that was unhelpful to the entity that hired him. *Id.* at 60. He also admitted he was trying to grow the expert testimony portion of his business. *Id.* at 60, 109.

During closing argument, Appellant's counsel emphasized these facts at length. N.T. Trial, 1/21-24/14, at 186-190. Specifically, Appellant's counsel highlighted the amounts of money Dr. Hely made from 2010 through 2012 (*Id.* at 186-87); the amount of Dr. Hely's income attributable to providing expert opinions and testimony (*Id.* at 187); the fact that 85 to 90 percent of his expert witness fees come from defense attorneys (*Id.*); the fact that Dr. Hely was less likely to be retained as an expert if he gave an opinion unfavorable to the party that retained him (*Id.* at 187-88); the fact that Dr. Hely's opinion was dated the same day he examined Appellant from 4:40 to 5:10 p.m., and therefore, according to Appellant, was predetermined and formulaic (*Id.* at 188-89). Appellant's counsel also noted that Dr. Hely initially underestimated the number of times per year he prepared expert reports on behalf of defendants. *Id.* at 189.

In summary, Appellant offered substantial evidence from which the jury could infer that Dr. Hely had an incentive to slant his expert report and deposition testimony in favor of Appellee. Based on the evidence admitted at trial, the jury had an opportunity to assess Dr. Hely's motives and

credibility in light of the income he received and the frequency with which he testified as a defense expert.

Appellant argues, nonetheless, that the trial court erred in excluding evidence that Dr. Hely received even more income as a defense expert witness than he admitted. The trial court sustained Appellee's objections to this line of questioning, reasoning that a miscalculation or misrepresentation by Dr. Hely concerning his income, even if one occurred, was unnecessary to the jury's assessment of Dr. Hely's credibility.

> Dr. Hely was asked directly about the economic impact and he freely admitted not only that he made a lot of money but that further he was trying to grow that portion of his business to obtain even more money. He also acknowledged that the insurance company was expecting a favorable report and that if he failed to deliver a favorable report he would be less likely to be hired by the insurance company in the future.

Trial Court Opinion, 5/14/14, at 2-3. We discern no abuse of discretion in the trial court's reasoning. The jury had sufficient information to assess Dr. Hely's potential motives and biases, and to permit defense counsel to conduct a detailed audit of Dr. Hely's finances would "divert the case into collateral matters." *Whetzel*, 860 A.2d at 1120.

Next, Appellant argues the trial court erred in excluding a line of testimony wherein Dr. Hely stated that he does not expect to see seriously injured persons when he is working for a defense attorney or insurance company because they typically do not litigate cases where an acute injury is obvious. Appellant argues this testimony would have exhibited Dr. Hely's

pre-determined bias against Appellee. Once again, we discern no abuse of discretion in the trial court's decision to exclude this evidence. The jury could have inferred Dr. Hely's bias against Appellee from his admissions that insurance companies expect favorable reports and that Dr. Hely was hoping to grow the expert testimony portion of his business. Further, Appellant relied on the date and time of Dr. Hely's examination of Appellant and the date of his expert report to argue that Dr. Hely's expert report was written in large part before he even met Appellant. Additional evidence of bias or predetermined hostility to Appellant's case was cumulative, and therefore properly excluded under Pa.R.E. 403.[4]

Appellant next argues the trial court erred in excluding a line of testimony wherein plaintiff's counsel examined him about the history of his relationship with the insurance company that paid for his services in this case. Appellant sought to establish that Dr. Hely received a substantial amount of his expert testimony income from the insurance carrier providing Appellee's defense in the instant case. The trial court disallowed this line of

_____

[4] That rule provides:

> The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or **needlessly presenting cumulative evidence.**

Pa.R.E. 403 (emphasis added).

questioning for concern that it would reveal that the defendant had liability insurance that could cover the alleged injury. Rule 411 of the Pennsylvania Rules of Evidence provides:

> Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control.

Pa.R.E. 411.

Appellant argues the evidence of Dr. Hely's longstanding relationship with the insurer was relevant to demonstrate Dr. Hely's bias. Appellant relies on *O'Donnell v. Bachelor*, 240 A.2d 484 (Pa. 1968), for the proposition that failure to disclose the relationship between a key witness and a defendant insurance company constitutes reversible error. In *O'Donnell*, the defendant's vehicle hit the plaintiff while the plaintiff was walking across a street. *Id.* at 484. While in the hospital, the plaintiff allegedly told an investigator he saw defendant's vehicle coming and ran across the street anyways. *Id.* at 485. Our Supreme Court ruled the trial court erred in declining to admit evidence that the investigator worked for the defendant's insurer. *Id.* at 486-88.

We believe the circumstances of *O'Donnell* are far removed from the instant case. There, the insurer's investigator procured an alleged statement from the plaintiff while the plaintiff was "harnessed to his bed, saturated with narcotics and sedatives and undergoing mental torture as to

- 10 -

when, if ever, he would ever walk again." **Id.** at 486. The defense successfully admitted the alleged statement into evidence without identifying the allegiance of the investigator who took it.

No such shenanigans took place instantly and, as we have discussed above, the jury was well aware of Dr. Hely's potential biases and motives. Nothing in **O'Donnell** compels the outcome Appellant seeks, and we discern no abuse of discretion in the trial court's decision to exclude evidence of Dr. Hely's relationship with the insurance company providing Appellee's defense.

We are cognizant that Appellant wished to identify the insurer only as a "payor." Arguably, this obviates the concerns attendant to the identification of a liability insurer. Nonetheless, we fail to see how this line of questioning would have added anything significant to the substantial body of evidence establishing Dr. Hely's ties to the defense bar. We discern no abuse of discretion in the trial court's ruling.

Appellant also argues the trial court erred in excluding evidence that many of Dr. Hely's fifty most recent expert reports offered diagnoses similar to what he offered in the instant case. That is, Dr. Hely commonly attributed the plaintiffs' symptoms to sprains, strains, or arthritis rather than a significant acute injury. Appellant argues this evidence establishes Dr. Hely's preconceived and biased view of the patients he will examine on behalf of a defense attorney or insurance company. Appellant notes that **Whetzel** permits evidence relevant to an expert's bias.

*Whetzel* does indeed hold that litigants are permitted to establish the potential bias of an expert witness. *Whetzel*, 860 A.2d at 1115. *Whetzel* also teaches that evidence impeaching an expert witness must be relevant to the "main issue before the court." *Id.* Also, as noted above, *Whetzel* teaches that impeachment of an expert must not divert the litigation into a trial on collateral matters. *Id.* at 1120. As a result, the *Whetzel* Court vacated an order directing the expert witness to produce income documents not related to the ongoing litigation. *Id.* at 1121.

Here, we discern no abuse of discretion in the trial court's decision to exclude from evidence a detailed examination of Dr. Hely's fifty most recent expert reports. The trial court reasoned such evidence was cumulative and unnecessary, given Dr. Hely's candid admission that he believes his employers expect favorable reports and that he hopes to continue to grow his business as an expert witness.

Appellant's final assertion of error is that the trial court abused its discretion in excluding evidence that Appellant's first party insurance carrier has provided coverage for plaintiff's injuries. Appellant argues the jury was entitled to know that Appellant's insurance company assessed the accident and determined Appellant suffered acute injuries stemming from the accident. Appellant notes that Pa.R.E. 411 applies only to liability coverage, and does not prohibit evidence related to a plaintiff's receipt of benefits from his own carrier. Appellant cites no law in support of admitting evidence of

the first party insurer's decision. Rather, he seems to rely solely on the absence of any prohibition similar to Rule 411.

The trial court reasoned as follows:

> The First Party carrier's payment is not binding on the Defendant. It is unknown what information the First Party carrier had when it made its decision or how much, if any, additional information the Defendant's insurance company had sometime later when it made its decision. It is simply comparing apples to oranges and no significance can be attributed to the decision of the First Party carrier to pay its likely less significant part of the total cost of the injuries.

Trial Court Opinion, 5/14/14, at 3-4.

We agree with the trial court's analysis, and based on that analysis any evidence pertaining to Appellant's insurer's coverage decision was irrelevant to the decision before the jury. The jury owed no deference to Appellant's insurer's decision and, as the trial court pointed out, the jury would have no means of knowing what evidence the insurer considered prior to making the coverage decision. The trial court acted within its discretion in excluding evidence of Appellant's insurer's coverage decision.

In summary, we have concluded that the trial court acted within its discretion concerning each of the disputed evidentiary rulings. As such, Appellant is not entitled to a new trial.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>3/17/2015</u>