J-A18012-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| DEANNA KEENE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| PAUL B. KIRSCH, M.D. AND FOSTERBROOK MEDICAL ASSOCIATES, P.C. | |
| Appellants | No. 1423 WDA 2016 |

Appeal from the Order August 29, 2016
In the Court of Common Pleas of McKean County
Civil Division at No(s): 2012-11112

BEFORE:  BOWES, LAZARUS, AND OTT, JJ.

MEMORANDUM BY BOWES, J.:                FILED FEBRUARY 12, 2018

Paul Kirsch, M.D. and Fosterbrook Medical Associates, P.C., appeal from the August 29, 2016 order granting Appellee Deanna Keene a new trial. We reverse and remand for consideration of the remaining contentions raised in Appellee's post-trial motion.

This appeal concerns matters that occurred after a jury trial in this medical malpractice lawsuit, which Appellee instituted against Appellants in connection with Dr. Kirsch's treatment of her after she suffered a heart attack. After jury selection, which was not recorded due to an agreement reached by the parties, the jury returned a verdict in favor of Appellants on February 10, 2016. The verdict was ten to two. Appellee filed a timely

motion for post-trial relief alleging, inter alia, that she had contacted the two dissenting jurors, Barbara Lias and Sheila Potter, and had secured affidavits from them.

These affidavits outlined various statements made by the other jurors during deliberations. Pertinent to this appeal are the averments regarding juror ten, Rod Johnson, and juror eleven, Jay McLaughlin. Ms. Lias reported that Mr. Johnson "stated that either he or a member of his immediate family had been a patient of the defendant, Dr. Kirsch[.]" Motion for Post-Trial Relief, 2/18/16, at Affidavit One. Ms. Potter's affidavit set forth the same information about Mr. Johnson, i.e, that either he or a member of his immediate family had been a patient of Dr. Kirsch. One affidavit also indicated that Mr. McLaughlin revealed during deliberations that a member of his immediate family was or had been a patient of Dr. Kirsch. Id. at Affidavit Two.

On May 3, 2017, the trial court held a hearing on the post-trial motion. The hearing was confined to the trial court's concern that some jurors may have given incorrect answers during voir dire that impacted Appellee's ability to exercise a challenge for cause. The court indicated that it intended to hold a hearing on the subject. Appellants objected to the conduct of any hearing based upon the affidavits of the two dissenting jurors, maintaining that such a hearing would violate the rule against impeaching a jury verdict based upon statements made during deliberations. After overruling that

objection, the trial court articulated that it was aware that the absence of a voir dire transcript affected its ability to decide the question, but Appellants had supplemented the record with a document that confirmed that the prospective jurors were asked whether they or a member of their immediate family was or had been a patient of either Dr. Kirsch or any member of his practice. Reply to Plaintiff's Motion for Post-Trial Relief, 3/7/16, at Exhibit A. With a single exception, there is no indication in the record as to how the parties agreed to proceed if any juror answered that question affirmatively, i.e, whether a juror would be questioned further on the subject or would be dismissed for cause.

That exception is contained in the transcript of the May 3, 2016 hearing. Appellee's counsel reported that the agreement was that Appellee was allowed to ask about "patient relationships with Dr. Kirsch," and the parties agreed that "anybody with a patient relationship with Dr. Kirsch is a per se for cause strike[.]" N.T. Hearing, 5/3/16, at 15 (emphases added). Appellants' counsel responded that he believed that such an arrangement had been reached, and the trial court also indicated that such an accord was consistent with its recollection of the proceedings. Id. Due to this exchange, the record establishes that the parties agreed that any juror would have been excused automatically had they indicated that they had ever been Dr. Kirsch's patient.

Relevant herein is that, at no point during the May 3, 2016 proceeding, did either Appellee or Appellant indicate that they had agreed that a juror could be automatically stricken for cause: 1) if an immediate family member of a juror had been or was then a patient of Dr. Kirsch; or 2) if a juror was a patient of one of the other doctors involved in Dr. Kirsch's practice.

The ensuing hearing occurred on May 18, 2016. The jurors who testified at that hearing were the two dissenting jurors, Ms. Lias and Ms. Potter, as well as juror ten, Mr. Johnson, and juror eleven, Mr. McLaughlin. Mr. Johnson stated that neither he nor any member of his family was ever a patient of Dr. Kirsch, n.t. hearing, 5/18/16, at 3, explaining that he was a patient of one of the other doctors in Dr. Kirsch's group, Dr. Rao Nadella. Mr. Johnson reported that, prior to trial, he was unaware that Dr. Kirsch was a member of Dr. Nadella's practice and that he never knew Dr. Kirsch. Mr. Johnson also unequivocally testified that, during voir dire, he had disclosed that he was a patient of Dr. Nadella, and that he made that fact clear to the attorneys.

Juror eleven, Mr. McLaughlin, stated that, while he was never one of Dr. Kirsch's patients, his mother was that doctor's patient "for a brief period of time" about four years before trial. Id. at 7. Mr. McLaughlin testified that he did not personally know Dr. Kirsch and had never taken his mother, who was deceased, to her medical appointments. When asked whether he knew

if his "mother had an opinion regarding Dr. Kirsch, was she happy with the care he provided?" Mr. Johnson responded, "As far as I know she was happy with him, yes." Id. at 11.

At that point, Mr. McLaughlin was asked if he recalled any of the questions asked during voir dire. The trial court explained to Mr. McLaughlin that, due to the absence of a transcript, "we can't remember whether or not jurors were asked whether they knew Dr. Kirsch. Do you remember whether that question was asked?" Id. at 8. Mr. McLaughlin responded, "I don't believe that it was." Id. at 8.[1] Mr. McLaughlin then was asked whether he had been questioned about whether he personally had been treated by Dr. Kirsch," and he again responded, "I don't believe so." Id.[2] When asked about whether there was an inquiry as to "family members being treated" by Dr. Kirsch, Mr. McLaughlin stated that he could not recall whether that question was asked. Id. at 8, 9.

During her testimony at the May 18, 2016 hearing, Ms. Potter retracted one of the affirmations in her affidavit by reporting that she did not remember whether Mr. Johnson indicated during deliberations that he or a member of his immediate family was a patient of Dr. Kirsch. Specifically,

---

[1] This response was accurate in that the jury was not asked if they knew Dr. Kirsch. See Footnote 3, infra; Appellee's brief at 4.

[2] Mr. McLaughlin's memory was faulty in this respect. Reply to Plaintiff's Motion for Post-Trial Relief, 3/7/16, at Exhibit A.

the trial court asked, "Do you recall Mr. Johnson indicating whether he or a member of his immediate family was a patient of Dr. Kirsch or a member of Dr. Kirsch's medical group?" She answered, "I don't recall for sure, but I think that he said that." Id. at 18. Counsel asked a similar inquiry: "Did Mr. Johnson, to your recollection, indicate during deliberations whether he knew Dr. Kirsch?" Id. at 19. Ms. Potter responded, "I can't remember that part." Id. Ms. Potter did report that Mr. McLaughlin told the jury that both he and his brother had been a patients of Dr. Kirsch; this testimony was inconsistent with the information in her affidavit, which had outlined that Mr. McLaughlin said only that a member of his immediate family was a patient. When asked about the inconsistency, Ms. Potter explained that it was "hard---to remember all this stuff." Id. at 25. Ms. Potter was not asked, nor did she indicate, whether Mr. McLaughlin reported during deliberations that he viewed Dr. Kirsch favorably based upon Dr. Kirsch's involvement with his treatment of his brother and himself.

Ms. Lias testified that Mr. Johnson said during deliberations that either his father or his brother had been Dr. Kirsch's patient and that "Dr. Kirsch had done a very nice job working with them[.]" Id. at 31. Ms. Lias did not mention specifically Mr. McLaughlin.[3]

_____

[3] We observe that Ms. Potter and Ms. Lias established that there were other problems with jury selection. Specifically, these two dissenting jurors also
(Footnote Continued Next Page)

The trial court granted a new trial. It concluded that Mr. Johnson and

Mr. McLaughlin had not answered the voir dire questions properly and that,

(Footnote Continued) ────────────────

reported that one juror knew Dr. Kirsch because she was an emergency medical technician and regularly worked with him; a different juror was Dr. Kirsch's next-door neighbor; and yet another juror was acquainted with Dr. Kirsch because his wife was a nurse who had worked with him and liked him. Appellee "concedes that jurors apparently were not asked by the court if they knew Dr. Kirsch" and that "counsel for Plaintiff failed to object to such a serious omission." Appellee's brief at 4 (emphasis in original). Additionally, both Ms. Lias and Ms. Potter testified that one juror demanded that he be named foreman and stated either that "he was tired of people suing other people all the time" or "he doesn't like people that go after money." N.T. Hearing, 5/18/16, at 17, 29.

The trial court indicated that the jurors were asked if they "had any opinions or knowledge which would prevent them from being a fair and impartial juror." Trial Court Opinion, 8/29/16, at 7 n.3. The jury foreman apparently failed to answer this inquiry honestly. While this question outlined by the trial court was not included in the document establishing the preliminary questions asked of the jury, Reply to Plaintiff's Motion for Post-Trial Relief, 3/7/16, at Exhibit A, there were two questions posed on this issue in Appellee's requested supplemental voir dire. Id. at Exhibit B, question 18 ("Do you presently hold any opinions which would prevent you from deciding a matter involving a claim of medical negligence or malpractice on behalf of a patient at a hospital against the physician responsible for treating the patient that would cause you difficulty in rendering a verdict a favor of a patient based solely on the evidence provided at trial and the law as it is given to you by the Court?"); Id. at question 19 ("Do you have any moral, religious or philosophical objections to someone who has been injured bringing a lawsuit against the party who caused the injury to hold that party accountable for the harm it has caused?"). While there were supplemental voir dire questions beyond those outlined in Exhibit A of Appellants' response to Appellee's post-trial motion, it is not clear from the record what questions were posed. The trial court is free to address the apparent problems with the jury foreman upon remand, and we direct the parties' attention to Pa.R.A.P. 1923, which outlines a procedure for ascertaining what transpired during a non-transcribed proceeding.

if they had, they would have been struck for cause either due to an agreement reached by the parties or based upon the law. This appeal followed. Appellants raise these issues:

> 1. Did the trial court err in ordering a new trial based upon Plaintiffs claims relating to voir dire, where Plaintiff waived any such claim as a matter of law by not making or requesting a record of jury selection, and by not making any record of any objections to the voir dire questions or process?
>
> 2. Did the trial court err in considering ex parte post-verdict affidavits from jurors, which Plaintiff obtained in support of her motion for new trial, in conducting an evidentiary hearing, and in granting Plaintiff a new trial, all of which violated the well-settled "no-impeachment" rule?
>
> 3. Did the trial court err and/or abuse its discretion in ordering a new trial based upon that court's erroneous assumption that the jurors in question would have been stricken by agreement or under this Court's Cordes decision?

Appellants' brief at 1.

We first outline the applicable standards when the trial court has granted a new trial. A trial court has "broad discretion to grant or deny a new trial," and we review a decision on that question pursuant to the abuse-of-discretion standard. Flenke v. Huntington, 111 A.3d 1197, 1199 (Pa.Super. 2015). There exists "a two-step process that a trial court must follow when responding to a request for new trial." Id. Initially, the court must decide whether a mistake occurred at trial. Id. If an error did transpire, the trial court must "determine whether the mistake was a sufficient basis for granting a new trial." Id. Specifically, the "harmless

error doctrine underlies every decision to grant or deny a new trial" so that a new trial "is not warranted merely because some irregularity occurred[.]" Id. at 1199-1200. Instead, the party moving for a new trial "must demonstrate to the trial court that he or she has suffered prejudice from the mistake." Id. at 1200. This Court then engages in the same two-step process, and, in so doing, we are confined to reviewing the express reason given for the grant of a new trial by the court so long as that court has articulated its precise reasoning. Id.

Appellants' first position is that Appellee waived her objection to the conduct of voir dire since she assented to the failure to record that proceeding. We decline to find waiver based upon the absence, by agreement, of a transcript of the voir dire proceeding as there is sufficient evidence of record to decide the matter before us. Nevertheless, the absence of a transcript of that proceeding has impeded our ability to affirm a key factual finding of the trial court, which is that the parties agreed that any juror could be struck for cause automatically if they revealed that a family member had been treated by Dr. Kirsch. We will more fully analyze that issue in connection with our resolution of the third issue raised on appeal.

We next address Appellants' second position, which is that the May 18, 2016 hearing was held in violation of the no-impeachment rule.[4]  While we appreciate that the May 18, 2016 hearing may have included testimony that violated the no-impeachment rule in this Commonwealth, the trial court's decision herein clearly was not premised upon what was said during deliberations.  Rather, the trial court concluded that Mr. Johnson and Mr. McLaughlin failed to answer voir dire questions truthfully and that, if they had, they would have been stricken for cause.

Specifically, in granting a new trial, the court "concluded that a new trial is required because a failure in the voir dire process compromised the integrity and fairness of the trial process."  Trial Court Opinion, 8/29/16, at

_____

[4] Pa.R.E. 606(b) embodies Pennsylvania's no impeachment rule, Pratt v. St. Christopher's Hosp., 866 A.2d 313 (Pa. 2005).  It  provides:

> Upon an inquiry into the validity of a verdict, . . . a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions in reaching a decision upon the verdict or concerning the juror's mental processes in connection therewith, and a juror's affidavit or evidence of any statement by the juror about any of these subjects may not be received. However, a juror may testify concerning whether prejudicial facts not of record, and beyond common knowledge and experience, were improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

Pa.R.E. 606(b).

1. It observed that a disclosure that would have disqualified a juror from sitting in the first instance "does not implicate the jury deliberation itself, but whether the juror should have been permitted to engage in the deliberation in the first place." Id. at 7 n.2. It found that, in response to specific questions on the subject, Mr. Johnson failed "to disclose a patient relationship between the juror and Dr. Kirsch's partner in practice" and that Mr. McLaughlin did not disclose a relationship between "the juror's mother and Dr. Kirsch." Id. at 11. The trial court continued that "if those relationships had been disclosed[,] the jurors would have been excused." [5] Id. The conclusion that both jurors would have been automatically excused for cause was premised upon the trial court's interpretation of the prevailing case law as well as its finding that counsel for Appellee and Appellants both agreed that a venire man who revealed any type of relationship with Dr. Kirsch could be excused for cause. See id. at 7 n.3 ("While there was no record of voir dire, counsel did agree that any potential juror who disclosed a relationship with Dr. Kirsch would be excused.") (emphasis added).

We conclude that inquiry into whether a juror did not properly answer questions during voir dire that would have led to removal for cause is not

_____

[5] We note that the trial court expressly found that neither Mr. Johnson nor Mr. McLaughlin was dishonest or disingenuous during jury selection. It surmised that "they did not hear or did not understand or were confused by the questions that were asked." Id. at 11 n.4.

prohibited by the no-impeachment rule,[6] and agree with the trial court that the inquiry pertains to whether the juror should have been allowed to participate in the deliberations at all rather than what occurred during deliberations. Our decision in Schwarzbach v. Dunn, 381 A.2d 1295, (Pa.Super. 1977), while not expressly containing a discussion of the no-impeachment rule, is instructive. In that decision, a new trial was awarded to a defendant because, even though questioned on the subject matter, a juror did not reveal a relationship that established that the juror would be favorably inclined to find for the plaintiff. The case involved an automobile accident wherein the plaintiff-passenger was severely injured in a vehicular accident, and there were allegations against the car manufacturer, Jeep, that its vehicle was defective.

After trial, Jeep discovered that the jury foreman was the husband of a secretary in the law offices of the plaintiff's attorney, and that the juror did not affirmatively answer a question designed to ferret out relationships or other biases that may have affected the juror's ability to be impartial. This Court determined that the relationship in question should have been revealed through a correct response to the voir dire question and that the

---

[6] In maintaining that the trial court's ruling herein violated the no-impeachment rule, Appellants rely exclusively on the United States Supreme Court's interpretation of the federal no-impeachment rule. Those cases are not precedential, and we have applied case law from this Commonwealth.

relationship was sufficiently close to establishing that the husband was favorably inclined to find for the plaintiff. We observed that every litigant is entitled to a fair trial, which includes "the right to be tried by an impartial jury," and held both that every juror has an affirmative duty to answer voir dire questions truthfully and that a failure to do so warrants the grant of a new trial if a party is prejudiced by the juror's failure to respond appropriately. Id. at 1297.

Similarly, in Commonwealth v. Rosario, 182 A.2d 75 (Pa.Super. 1962), we held that incorrect responses to voir dire questions misled defense counsel, who was thereby unable to exercise his right to challenge the jurors. Specifically, venire men were asked if they were related to any law enforcement officers. Two jurors were parents of police officers and had not answered that question properly. We affirmed the trial court's decision to award the defendant a new trial, reasoning that the incorrect responses impacted on the defendant's ability to challenge the jurors.

In conclusion, both Schwarzbach and Rosario support the trial court's finding that an incorrect response to a voir dire question that would reveal a prejudicial predisposition for or against a party is grounds for a new trial in this Commonwealth. We therefore affirm the court's ruling that the no-impeachment rule is not implicated in this setting.

We now address Appellants' third issue, which is that the record does not support the trial court's determination that Mr. Johnson and Mr.

McLaughlin would have been removed for cause either by agreement or under the law. For the reasons that follow, we agree with their assessment of the record and the law. Preliminarily, we must discuss the trial court's finding that Mr. Johnson had not revealed during voir dire that he had been a patient of Dr. Nardella, who was part of Dr. Kirsch's medical practice. This finding was premised upon Mr. Johnson's own testimony. See Trial Court Opinion, 8/29/16 at 7 n.2 ("I have determined that a new trial is warranted solely on the basis of the testimony of Juror Ten [Mr. Johnson] and Juror 11 [Mr. McLaughlin.]").

The trial court's ruling that Mr. Johnson failed to reveal that he was Dr. Nardella's patient is not in accord with the testimony provided by Mr. Johnson, who insisted that he had told counsel about that fact during voir dire and that he had made that relationship clear to counsel. Appellee concedes herein that Mr. Johnson's testimony cannot be refuted by the record due to the absence of a transcript of the voire dire proceeding. Appellee's brief at 9 ("Despite the trial court's conclusion that Juror 10 [Mr. Johnson] did not disclose his long-term patient relationship with Dr. Kirsch's partner during voir dire, . . . the absence of a record of voir dire precludes an appropriate review of the trial court's determination on that issue."); Id. at 12 ("For purposes of this appeal, plaintiff agrees with defendants that in the absence of a record of the voir dire proceedings, there is insufficient record evidence to support the trial court's determination that Juror 10 failed

- 14 -

to disclose his patient relationship with Dr. Kirsch's partner."). Accordingly, Appellee urges affirmance of the trial court's grant of a new trial solely based upon Mr. McLaughlin's admitted failure to reveal that four years prior to trial, his mother had briefly treated with Dr. Kirsch.

Thus, we now assess whether the record supports the trial court's determination that the parties agreed that a juror would be excused for cause if they revealed that a close family member had ever been treated by Dr. Kirsch. The trial court found, "While there was no record of voir dire, counsel did agree that any potential juror who disclosed a relationship with Dr. Kirsch would be excused." Trial Court Opinion, 8/29/16, at 7 n.3 (emphasis added). This finding is not supported by a citation to the record nor did the trial court indicate that it remembered that such an accord was reached.

On the other hand, Appellants deny that they agreed that a venire man who revealed any type of relationship with Dr. Kirsch could be excused for cause. They maintain that the trial court "erroneously states [at footnote 3 of its August 29, 2016 opinion] that these two jurors would [have] been stricken by agreement. There was no such agreement." Appellants' brief at 44. The record supports Appellants' position. The only agreement placed on the record was as follows. Appellee's counsel reported that the agreement was that Appellee was allowed to ask about "patient relationships with Dr. Kirsch," and the parties agreed that "anybody with a patient relationship

with Dr. Kirsch is a per se for cause strike[.]" N.T. Hearing, 5/3/16, at 15 (emphases added). At no point did either Appellants or Appellee indicate that they had agreed that a juror could be stricken automatically if a family member of a juror had been Dr. Kirsch's patient. See Appellants' brief at 44 (The agreement did not apply to Mr. Johnson or Mr. McLaughlin). Due to the absence of a voir dire transcript, there is no support for a finding that such an agreement was reached.[7]

Therefore, we must now determine whether Mr. McLaughlin would have been stricken for cause under the pertinent law had he revealed that his mother briefly was a patient of Dr. Kirsch four years prior to trial. Our Supreme Court in Shinal v. Toms, 162 A.3d 429, 438 (Pa. 2017), reaffirmed longstanding precedent that one of the "most essential elements of a successful jury trial is an impartial jury." (quoting Bruckshaw v. Frankford Hosp. of City of Phila., 58 A.3d 102, 109 (Pa. 2012)). The Shinal Court observed that juror impartiality is protected by the voir dire process, which is utilized to ascertain whether the jury has either any actual bias or partially or the appearance of partiality of bias with respect to, inter alia, the parties." It noted: "Challenges for cause are essential means by

_____

[7] In suggesting that the agreement would have encompassed Mr. McLaughlin, Appellee merely relies upon the trial court opinion, which provides no citation to the record, and the transcript of the May 3, 2016 hearing, which supports that the agreement extended only to venire men with a patient relationship to Dr. Kirsch.

which to obtain a jury that in all respects is impartial, unbiased, free from prejudice, and capable of judging a case based solely upon the facts presented and the governing law." Shinal, supra at 438. There are two scenarios mandating the grant of a challenge for cause: 1) when a juror's relationship with a party is sufficiently close that the courts presume the likelihood of prejudice; and 2) when the juror reveals a likelihood of prejudice through his or her conduct and answers to questions. Id.

Herein, the trial court applied then-controlling precedent provided by the fractured en banc decision in Cordes v. Assocs. of Internal Med., 87 A.3d 829 (Pa.Super. 2014) (en banc), as that decision discussed the present scenario, i.e., a relationship between a defendant doctor and a juror's close family member.[8] Therein, a juror's wife had an existing patient relationship with the defendant doctor. Another juror's parents also had an extant relationship with that doctor, and had been told by her parents that they treated with the doctor regularly and liked her. The trial court refused to excuse the two jurors in question for cause. This Court reversed.

_____

[8] While Appellants suggest we should apply Shinal v. Toms, 162 A.3d 429 (Pa. 2017), and reverse on its basis, we disagree. That decision involved employment relationships of family members of jurors rather than patient-care relationships, which this case involves. Moreover, the pertinent issue is whether Appellee could have exercised a challenge for cause when this jury was chosen rather than under law that was not yet in existence. When jury selection occurred herein, Cordes was precedential.

A majority of the Court agreed that any juror whose spouse has an existing patient relationship with a defendant doctor should automatically be removed for cause. Then-Judge, now Justice Wecht, who was joined by Judge Bender, concluded that the same result should apply to any juror whose parents had a current patient relationship with a defendant doctor. Thus, Judge Wecht and Judge Bender placed both an existing spousal relationship with a defendant doctor and a current parental relationship with the doctor in the category of presumed prejudice.

Then-Judge, now Justice Donohue, who was joined by now-President Judge Gantman as well as Judge Ott, wrote a concurring opinion. Those jurists agreed with the presumption of prejudice when a juror's spouse is currently being treated by the defendant. However, they disagreed that the existence of an extant relationship between the defendant doctor and a juror's parent requires automatic removal from the jury panel under the presumption-of-prejudice standard, observing that not all adults have an intimate involvement in their parents' medical care or their medical providers. Justice Donohue, however, did agree that the juror under consideration in Cordes should have been removed for cause because her questioning revealed the appearance of bias or prejudice in favor of the doctor. Justice Donohue relied upon the juror's revelations that she was close to her parents, knew about their medical treatment, and was aware of

their positive perception of the defendant doctor, who was her parents' active treating physician.

In this case, Mr. McLaughlin reported that, while he was never one of Dr. Kirsch's patients, his deceased mother had been his patient "for a brief period of time" about four years before trial. N.T. Hearing, 5/18/16, at 3. Mr. McLaughlin continued that he did not personally know Dr. Kirsch and had never taken his mother to her medical appointments. When asked whether he knew if his "mother had an opinion regarding Dr. Kirsch, was she happy with the care he provided?" the juror responded, "As far as I know she was happy with him, yes." Id. at 11.

It is clear that Mr. McLaughlin would not have been removed for cause under either Justice Wecht's or Justice Donohue's views in Cordes. First, Mr. McLaughlin's mother was not a current patient of Dr. Kirsch at the time of trial, having briefly treated with him four years prior thereto. Second, Mr. McLaughlin reported that he was uninvolved in her medical care, did not take her to appointments, and had no definitive knowledge as to whether his mother was satisfied with Dr. Kirsch's treatment. While the trial court indicated that testimony from Ms. Potter and Ms. Lias supported his decision herein, Trial Court Opinion, 8/26/16, at 7 n.2, we cannot agree with this assessment. Ms. Potter was apparently confused about Mr. McLaughlin, stating that Mr. McLaughlin indicated that both he and his brother were

currently under Dr. Kirsch's care.  Ms. Lias did not testify specifically about Mr. McLaughlin.

Thus, we conclude that the precise reason offered by the trial court in support of a grant of a new trial, which was that Mr. McLaughlin would have been automatically excused from the jury panel by agreement or under the law, was an abuse of discretion.  Additionally, even if Mr. McLaughlin should not have been seated on the jury, it is evident that Appellee was not prejudiced by his presence.  His connection to Dr. Kirsch was simply too attenuated to establish prejudice under the standards applicable to warrant of a new trial.

While Appellants request that judgment be entered on the verdict, we observe that Appellee's remaining post-trial motions were not addressed by the trial court so that such relief is inappropriate.

Order reversed. Case remanded for further proceedings consistent herewith.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  2/12/2018