Maryann SABOL, Executrix of the Estate of George P. Sabol, Deceased, and Maryann Sabol, in her Own Right, Appellant

v.

ALLIED GLOVE CORPORATION, Anchor Packing Company, Argo Packing Company, Beazer East, Inc., CBS Corporation, Coppus Turbines, Durabla Manufacturing, Easton Corporation, Garlock Sealing Technologies, LLC, General Electric Company, George V. Hamilton, Inc., Industrial Holdings Corporation, Ingersoll–Rand Corporation, I.U. North America, Inc., Metropolitan Life Insurance Company, Owens–Illinois, Inc., Plotkin Brothers Supply, Inc., Premier Refractories, Inc., Safety First Industries, Inc., and United States Steel Corporation,

v.

Carnegie Mellon University, General Motors Corporation, Genuine Parts Company, Lindberg, Melrath Supply and Gasket Company, and Unifrax Corporation.

Superior Court of Pennsylvania.

Argued June 22, 2011.
Filed Sept. 22, 2011.
Reargument Denied Nov. 22, 2011.

Jeffrey V. Mansell, Pittsburgh, for appellant.

Walter P. DeForest, III, Pittsburgh, for Carnegie Mellon, appellee.

BEFORE: FORD ELLIOTT, P.J.E., BENDER, and STRASSBURGER*, JJ.

* Retired Senior Judge assigned to the Superior Court.

OPINION BY STRASSBURGER, J.:

Appellant, Maryann Sabol (Sabol), as executrix of the estate of her husband, George P. Sabol (Dr. Sabol), and on her own behalf, filed a products liability lawsuit against Carnegie Mellon University (CMU) and numerous other defendants seeking damages for Dr. Sabol's mesothelioma caused by asbestos exposure. Although this lawsuit involved numerous asbestos-related defendants, this appeal relates to one defendant, CMU, and two trial court orders: 1) the grant of summary judgment in favor of CMU, and 2) a discovery order limiting Sabol's scope of discovery against CMU. Upon review, we affirm in part, reverse in part, and remand for further proceedings.

Dr. Sabol attended the Carnegie Institute of Technology (now CMU) as a graduate student pursuing his Ph.D. from the fall of 1961 through the summer of 1965. Dr. Sabol's thesis work began during the summer of 1963. Dr. Sabol testified at his deposition that there were two separate, but related aspects to his thesis work: 1) a research assistantship for which he received pay; and 2) research for his Ph.D. thesis which was part of his education. N.T., 3/11/2009, at 285–6. Dr. Sabol testified that his work done at CMU was part of his education and he never considered himself an employee. *Id.* at 67, 87.

On January 31, 2008, Dr. Sabol was diagnosed with mesothelioma. On January 6, 2009, Dr. Sabol filed a complaint in negligence and strict liability against numerous asbestos-related defendants alleg-ing that they knew or should have known that exposure to asbestos was deleterious to Dr. Sabol's health. On February 4, 2009, Dr. Sabol filed an amended complaint to add CMU as a defendant.[1] The case proceeded through discovery, including a dispute, at issue here, regarding how broad Sabol's discovery requests could be. On January 15, 2010, CMU filed a motion for summary judgment asserting Sabol's claims were barred by the exclusive remedy provisions of the Pennsylvania Workers' Compensation Act.[2] In response, Sabol contended that Dr. Sabol's asbestos exposure was non-occupational because he was exposed in his capacity as a student, rather than as an employee of CMU. On March 31, 2010, the trial court granted summary judgment in favor of CMU. On June 23, 2010, the trial court denied Sabol's motion for reconsideration. On December 28, 2010, the trial court granted Sabol's motion for a final order because all claims against all parties had been disposed of in this case. That order was filed on January 4, 2011. On January 26, 2011, Sabol filed a timely notice of appeal. Both the trial court and Sabol complied with Pa.R.A.P. 1925.

On appeal, Sabol presents two questions for our review:

1. Whether the [t]rial [c]ourt erred by granting summary judgment against [Sabol] and in favor of [CMU], on the basis that [Sabol's] claims against [CMU] were barred by the exclusivity provision of the Workers' Compensation Act, when [Dr. Sabol's] exposure oc-

---

1. Dr. Sabol died on May 5, 2009 and his wife, Maryann Sabol, was appointed executrix of Dr. Sabol's estate and substituted as plaintiff in this action.

2. The exclusivity provision of the Workers' Compensation Act provides, in relevant part:

   The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.

   77 P.S. § 481(a).

curred during his time as a student and research assistant at Carnegie Institute of Technology.

2. Whether the [t]rial [c]ourt erred by requiring [CMU] to respond to discovery requests only with respect to gloves and a furnace, rather than any other potential asbestos-containing products used by [Dr. Sabol] at Carnegie Institute of Technology.

Sabol's Brief at 5.[3]

We first consider whether the trial court improperly limited the scope of discovery.[4] The certified record reveals that the trial court entered the following order:

> AND NOW, this 30th day of October, 2009, the plaintiff's motion to dismiss objections to interrogatories and request for production of documents is denied and the defendant Carnegie Mellon University is directed to answer all interrogatories pertaining to the asbestos gloves and the furnace used by the plaintiff during the years 1964–1966.

Trial Court Order, 10/30/2009.[5]

At his deposition, Dr. Sabol testified that the gloves he used and the furnace were both asbestos-containing products. N.T., 3/11/2009, at 276, 296. Thus, the trial court limited the scope of discovery to only those products. Dr. Sabol asserts that the limitation on discovery was improper because "a plaintiff's ability to recall every asbestos-containing product to which he was exposed can easily be limited by the intervening years between his exposure and the onset of his disease." Sabol's Brief at 17. Thus, Sabol contends that discovery should have been permitted as to all asbestos-containing products rather than just those Dr. Sabol could remember. *Id.* CMU responded such discovery amounted to a "fishing expedition about a huge campus building, Doherty Hall, and matters extending back fifty years ago, that would have been extremely burdensome for [CMU]." CMU's Brief at 15.

"Generally, in reviewing the propriety of a discovery order, our standard of review is whether the trial court committed an abuse of discretion." *Gormley v. Edgar*, 995 A.2d 1197, 1202 (Pa.Super.2010). An "[a]buse of discretion occurs if the trial court renders a judgment that is manifest-

---

3. We point out that our Supreme Court's ultimate ruling in *Landis v. A.W. Chesterton*, 20 A.3d 1183 (Pa.2011) (*per curiam* order), where the Court granted a consolidated petition for allowance of appeal on three issues, may be instructive in this case. In *Landis, supra*, both plaintiffs were exposed to asbestos during the course of employment and, as a result, sued their employers. The employers moved to dismiss the complaint, citing the exclusivity provision of the Workers' Compensation Act. The trial court denied the motion to dismiss. The Superior Court reversed and remanded for entry of judgment in favor of employers, reasoning that "the exclusivity provision of the Workers' Compensation Act applied even though the alleged harm did not manifest itself until after the 300 week limit for raising a claim." *Tooey v. AK Steel*, 11 A.3d 1046 (Pa.Super.2010) (unpublished memorandum), *appeal granted*, 20 A.3d 1184 (Pa.2011). Our Supreme Court will consider whether this provision unconstitutionally de-

prives plaintiffs of the opportunity to obtain compensation for their injuries.

4. We note that the trial court did not have the opportunity to offer an opinion on this issue because the Honorable Daniel J. Ackerman, who made the ruling in October 2009, had retired from the bench prior to the appeal being filed. *See* Trial Court Opinion, 2/11/2011, at 1.

5. We note that the certified record does not contain the motion filed by Dr. Sabol or any response filed by CMU. "The failure of the appellant to ensure that the original record certified for appeal contains sufficient information to conduct a proper review may constitute a waiver of the issues sought to be examined." *Kessler v. Broder*, 851 A.2d 944, 950 (Pa.Super.2004). However, because CMU does not object and we are able to understand the argument, we will address the merits of this issue.

ly unreasonable, arbitrary or capricious; that fails to apply the law; or that is motivated by partiality, prejudice, bias or ill-will." *Hutchinson v. Penske Truck Leasing Co.*, 876 A.2d 978, 984 (Pa.Super.2005). The trial court's limitation of discovery to only the items identified in Dr. Sabol's deposition during the time period he used them does not rise to this level. Thus, we discern no abuse of discretion and we affirm the trial court's discovery order.

We now consider the trial court's order granting summary judgment in favor of CMU. Our standard of review for an appeal from the grant of a motion for summary judgment is well settled. We will uphold a grant of summary judgment only in those cases in which the pleadings, depositions, interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *ADP, Inc. v. Morrow Motors Inc.*, 969 A.2d 1244 (Pa.Super.2009); *See* Pa.R.C.P. 1035.2. In reviewing a grant of summary judgment, we accept as true all well-pleaded facts in the non-moving party's pleadings and give the non-moving party the benefit of all reasonable inferences to be drawn therefrom. *Coleman v. Wyeth Pharmaceuticals, Inc.*, 6 A.3d 502 (Pa.Super.2010). We may reverse a grant of summary judgment only if there has been an error of law or an abuse of discretion. *Id.*

Whether an employee was acting in the course and scope of his employment is a question of law. *Hastings v. Pa. Nat. Mut. Cas. Ins. Co.*, 407 Pa.Super. 282, 595 A.2d 1150 (1991). When questions of law are involved, the review of the grant of summary judgment will be made in the context of the entire record. *Summers v. Certainteed Corp.*, 606 Pa. 294, 997 A.2d 1152 (2010). The Pennsylvania Workers'

Compensation Act provides for the compensation of employees who sustain "injuries," as that term is defined,

in the course of their employment and related thereto and shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employee, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of the employment.

77 P.S. § 411(1). The liability of the employer under this Act is "exclusive and in place of any and all other liability to such employes." 77 P.S. § 481(a). This exclusivity provision "is a version of the historical *quid pro quo* employers received for being subjected to a no-fault system of compensation for worker injuries. That is, while the employer assumes liability without fault for a work-related injury, he is relieved of the possibility of a larger damage verdict in a common law action." *Lewis v. School District of Philadelphia*, 517 Pa. 461, 538 A.2d 862, 867 (1988) (internal citations omitted).

In support of granting summary judgment in favor of CMU, the trial court concluded that "the fact that [Dr. Sabol] was pursuing a degree does not change the fact that he was a paid employee who performed research services in the laboratory for valuable consideration." Trial Court Opinion, 3/31/2010, at 4. Thus, the trial court determined that Dr. Sabol was

an employee as a matter of law. We disagree.

The question of whether a graduate student, who was on the premises of a university as both a graduate student and an employee, should solely be considered an employee for the purposes of Workers' Compensation is a question of first impression in Pennsylvania. We begin our analysis by looking at the definition of an employee under the Workers' Compensation Act.

> The term "employe," as used in this act is declared to be synonymous with servant, and includes—
>
> All natural persons who perform services for another for a valuable consideration, exclusive of persons whose employment is casual in character and not in the regular course of the business of the employer[.]

77 P.S. § 22.

■ Under this definition, there is no doubt that at some times during his tenure, Dr. Sabol was an employee of CMU because he performed services for valuable compensation. However, the record also reveals that at some times during his tenure, Dr. Sabol was working in the laboratory, and being exposed to asbestos, while acting in his capacity as a Ph.D. student. Therefore, we conclude that a fact-finder should resolve the issue of how much asbestos exposure occurred while Dr. Sabol was acting in his capacity as a student, rather than as an employee.[6]

---

6. Possibly, the trial court could look to section 433A of the Restatement (Second) of Torts governing apportionment of harm to causes for guidance. In such cases, the trial court first determines as a matter of law whether the harm is capable of apportionment. Then, the jury determines the proportions from the evidence presented. *See Glomb by Salopek v. Glomb*, 366 Pa.Super. 206, 530 A.2d 1362, 1365 (1987) ("A court can direct the apportionment of liability among distinct causes only when the injured

Discovery order affirmed. Order granting summary judgment in favor of CMU reversed. Case remanded. Jurisdiction relinquished.

---

party suffers distinct harms or when the court is able to identify a reasonable basis for determining the contribution of each cause to a single harm.").

