J-A31044-16

## NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| JAMES B. MARTIN<br><br>            Appellant<br><br>            v.<br><br>BILL VILLA, ROBERT J. WALSH A/K/A "BOBBY GUNTHER WALSH," IHEART COMMUNICATIONS, INC. F/K/A CLEAR CHANNEL COMMUNICATIONS, INC. CAPSTAR RADIO OPERATING COMPANY, IHEARTMEDIA, INC. F/K/A CC MEDIA HOLDINGS, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br><br><br><br><br>No. 95 EDA 2016 |

Appeal from the Order Entered December 8, 2015
in the Court of Common Pleas of Lehigh County Civil Division
at No(s): 2015-C-406

| | |
|---|---|
| JAMES B. MARTIN<br><br>       v.<br><br>BILL VILLA, ROBERT J. WALSH, CAPSTAR TX, LLC, IHEART COMMUNICATIONS AND IHEART MEDIA, INC.<br><br>APPEAL OF: THE OFFICE OF THE DISTRICT ATTORNEY OF LEHIGH COUNTY | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br><br><br>No. 128 EDA 2016 |

Appeal from the Order Entered December 8, 2015
in the Court of Common Pleas of Lehigh County Civil Division
at No(s): 2015-C-406

J-A31044-16

BEFORE: BENDER, P.J.E., MOULTON , J., and FITZGERALD, [*] J.

MEMORANDUM BY FITZGERALD, J.:                    **FILED AUGUST 15, 2017**

Appellants, James B. Martin ("Martin") and The Office of the District Attorney of Lehigh County ("Office"), appeal the order entered in the Lehigh County Court of Common Pleas granting the motion filed by Appellees, Bill Villa ("Villa"), Robert J. Walsh a/k/a "Bobby Gunter Walsh," iHeartCommunications, Inc. f/k/a Clear Channel Communications, Inc., Capstar Radio Operating Company, and iHeartMedia, Inc., f/k/a CC Media Holdings, Inc., to compel discovery.[1] We vacate in part, reverse in part, and remand for further proceedings consistent with this memorandum.

The trial court summarized the facts and procedural posture of this case as follows:

> This matter involves the alleged defamation by [Appellees] of [Martin], a district attorney, by way of a radio talk show. The lawsuit arises out of statements regarding [Martin's] prosecution and handling of certain cases, including DUI homicide cases. As a result of [Martin's] failure to produce documents and information regarding the prosecution of cases at issue, [Appellees] filed a motion to compel discovery from [Martin]. Provided that the sought after documents and information requested by [Appellees] are highly relevant and in the exclusive possession of [Martin], this court granted [Appellees'] motion to compel discovery of the requested documents and information.

---

[*] Former Justice specially assigned to the Superior Court.

[1] **See** R.R. at 439a (Case 95 EDA 2016). For the parties' convenience, we refer to the reproduced record filed in 95 EDA 2016.

- 2 -

* * *

This action was initiated on February 6, 2015 by the filing of a complaint by [Martin], alleging counts of defamation and false light invasion of privacy against [Appellees].[2] This defamation action stems from statements made by [Villa], on the radio show of

---

[2] *Id.* at 10a. In the complaint, Martin reproduced verbatim the content of the broadcasts which he averred were "false and defamatory." *See id.* at 16a-19a, 21a . Martin averred that the

false and defamatory statements published by Villa, Walsh and Clear Channel falsely and maliciously conveyed and/or implied that Martin:

a. "fixed" criminal prosecutions in Lehigh County;

b. concealed evidence relating to criminal prosecutions in Lehigh County;

c. deliberately failed to collect evidence relating to criminal prosecutions in Lehigh County;

d. lied to crime victims and crime victims' families relating to a criminal prosecution in Lehigh County;

e. lied to a judge relating to criminal prosecutions in Lehigh County;

f. "plays favorites" and provides "favors" relating to criminal prosecutions and the administration of justice in Lehigh County;

g. colluded with the media to conceal the truth about criminal prosecutions in Lehigh County; and

h. is corrupt, crooked and has comported himself as a criminal in relation to his handling of criminal prosecutions in Lehigh County.

*Id.* at 19a-20a.

[iHeartCommunications, Inc. f/k/a Clear Channel Communications, Inc., Capstar TX LLC, iHeartMedia, Inc., f/k/a CC Media Holdings, Inc. and iHeart Media, Inc.] (the "WAEB AM 790 [Appellees]"), concerning Martin's handling of his cases as the Lehigh County District Attorney, and specifically, his management involving DUI cases.[fn1]

---

[fn1] Villa's daughter was killed by a drunk driver who was prosecuted by the . . . Office. Martin charged the drunk driver with Homicide by Vehicle-DUI although Villa thought the drunk driver should have been charged with Murder in the Third Degree.

---

At the early stages of the discovery process, the WAEB AM 790 [Appellees] sought documents and records relating to: the criminal prosecutions that Martin specified in his complaint, disciplinary matters involving Martin, Martin's financial information since 2010, and Martin's reputation before and after the broadcasts at issue. [Appellee also served the Office with a discovery request.] Martin failed to produce the requested documents and information.

[On August 21, 2015, the Office filed a motion to quash the subpoena for the production of documents relating to certain cases from 2005 to the present. R.R. at 961a. The Office, in relevant part, objected to the disclosure of information subject to the Criminal History Record Information Act ("CHRIA"), 18 Pa.C.S. §§ 9101-9183 and the work product doctrine. *Id.* at 59a, 60a, 64a. The trial court did not rule on the Office's motion to quash.]

On October 27, 2015, the WAEB AM 790 [Appellees] filed a Motion to Compel Discovery[3] from Martin. Martin filed a Response to the WAEB AM 790 [Appellees'] Motion to Compel Discovery on November 11, 2015,[4] and subsequently, on December 1, 2015, [docketed December

---

[3] *Id.* at 439a.

[4] *Id.* at 845a.

8, 2015, the trial court] issued an Order granting WAEB AM 790 [Appellees'] motion.

Trial Ct. Op., 5/24/16, at 2-3.

On December 11, 2015, the Office filed a "request for a protective order of discovery subject to the [c]ourt's December 8, 2015 order granting [the WAEB AM 790 Appellees'] motion to compel." R.R. at 987a. The Office noted that it previously filed a motion to quash the subpoena and "invited" the trial court to conduct an *in camera* review of the material, but the trial court did not rule on its motion. *Id.* at 989a. Therefore, the Office requested a protective order excluding disclosure until the court ruled on the motion to quash. The trial court did not rule on the motion to quash or the request for a protective order.

Martin and the Office timely filed notices of appeal on December 30, 2015. Appellants were not ordered to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The trial court filed a Pa.R.A.P. 1925(a) opinion.[5] This Court consolidated these appeals.

Martin raises the following issues on appeal:

> A. Whether the [t]rial [c]ourt erred by ordering Martin to produce documents and information in the exclusive possession, custody and control of the [Office] and not in Martin's possession as an individual, and which documents and information are privileged and statutorily prohibited from dissemination by the Criminal History Records Information Act (CHRIA), 18 Pa.C.S. § 9101 *et seq.*

---

[5] The trial court filed the same opinion in both appeals.

- 5 -

B. Whether the trial court erred by ordering Martin to produce confidential documents and information related to disciplinary complaints regarding Martin to the Pennsylvania Disciplinary Board which resulted in no action against him, the production of which would be in violation of the Pennsylvania Rules of Disciplinary Enforcement and the Pennsylvania Disciplinary Board Rules.

C. Whether the trial court erred by ordering Martin to produce confidential and private documents and information regarding Martin's tax returns, income and finances even though Martin does not intend to assert a claim for economic damages related to wage and income loss at trial.

Martin's Brief at 3.

The Office raises the following issue for our review:

Did the lower court err in granting a motion to compel which required James B. Martin to provide case files from the Office . . . in a civil case to which the [O]ffice is not a party and the contents of the files are both privileged and protected by statute?

The Office's Brief at 5.

As a prefatory matter, we consider whether we have jurisdiction over the instant appeals from the December 8th discovery order, which is not a final order pursuant to Pa.R.A.P. 341. First, we address the issue of the order insofar as it compels Martin to provide case files from the Office.

> As a general rule, an appellate court's jurisdiction extends only to review of final orders. *See* Pa.R.A.P. 341 ("[A]n appeal may be taken as of right from any final order.") Final orders are those which either (1) dispose of all claims and all parties, (2) are explicitly defined as final

orders by statute, or (3) are certified as final orders by the trial court or other reviewing body. ***See*** Pa.R.A.P. 341.

\* \* \*

Rule 341 reflects the traditional approach of American appellate courts. However, in ***Cohen v. Beneficial Ind. Loan Corp.***, 337 U.S. 541 [ ] (1949), the United States Supreme Court crafted the collateral order doctrine, permitting the appeal of a narrow class of orders which address claims of right "separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause [of action] itself to require that appellate consideration be deferred until the whole case is adjudicated." ***Id.*** at 546, [ ].

This Court followed the United States Supreme Court in adopting a "practical rather than a technical construction" of what constitutes an appealable order, and so permitting immediate appellate review of certain collateral orders. ***See Pugar v. Greco***, [ ] 394 A.2d 542, 545 ([Pa.] 1978) (quoting ***Cohen***, ***supra*** ). Pa.R.A.P. 313, promulgated in 1992, solidified and codified the collateral order doctrine. That rule provides, in pertinent part:

> **(a) General rule.** An appeal may be taken as of right from a collateral order of an administrative agency or lower court.
>
> **(b) Definition.** A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313. Accordingly, where an order satisfies Rule 313's three-pronged test, we may exercise appellate jurisdiction where the order is not final.

***Rae v. Pa. Funeral Dir. Ass'n***, 977 A.2d 1121, 1124-25 (Pa. 2009)

(footnote omitted).

- 7 -

In the case *sub judice*, the discovery order compelling Martin to disclose case files from the Office is separable from the main cause of action. *See id.* at 1125. The right involved is too important to be denied review. *Id.* Moreover, the "disclosure of the documents 'cannot be undone,' so that if review is postponed, the claim will be irreparably lost." *Id.* at 1126 (citation omitted). Accordingly, we have jurisdiction to consider the issue on appeal. *See id.* at 1125.

We address the first issue raised by Martin and the sole issue raised by the Office together, as they are interrelated. Martin avers that certain documents and information sought by Appellees are not in his possession. They are in the possession of the Office. He further argues that the disclosure of this information is prohibited by statute, citing 18 Pa.C.S. § 9106(c)(4). Martin's Brief at 18. "To comply with the Trial Court's December [8], 2015 Order, Martin would be compelled to take possession of criminal files that are solely the property of the . . . Office, and to disseminate the information contained within those files, in violation of the express prohibitions of CHRIA, thereby subjecting himself to civil and criminal liability."[6] *Id.* at 21.

---

[6] 18 Pa.C.S. § 9106 provides: "Any person, including any agency or organization, who violates the provisions of this section shall be subject to the administrative penalties provided in section 9181 (relating to general administrative sanctions) and the civil penalties provided in section 9183 (relating to civil actions) in addition to any other civil or criminal penalty provided by law." 18 P.C.S. § 9106(g). Section 9183 provides:

Similarly, the Office argues that the requested files are not discoverable pursuant to 18 Pa.C.S. § 9106(c)(4), noting that failure to comply with CHRIA has civil and criminal penalties pursuant to 18 Pa.C.S. § 9183. Office's Brief at 10-11. According to the Office, "[t]he majority of the documents contained in the requested case files are exactly the type of protected information, dissemination of which is limited by CHRIA. " *Id.* at 11.

Our review is guided by the following principles:

> Generally, in reviewing the propriety of a discovery order, our standard of review is whether the trial court committed

---

**(b) Action for damages.**—

(1) Any person aggrieved by a violation of the provisions of this chapter or of the rules and regulations promulgated under this chapter, shall have the substantive right to bring an action for damages by reason of such violation in a court of competent jurisdiction.

(2) A person found by the court to have been aggrieved by a violation of this chapter or the rules or regulations promulgated under this chapter, shall be entitled to actual and real damages of not less than $100 for each violation and to reasonable costs of litigation and attorney's fees. Exemplary and punitive damages of not less than $1,000 nor more than $10,000 shall be imposed for any violation of this chapter, or the rules or regulations adopted under this chapter, found to be willful.

18 Pa.C.S. § 9183(b)(1)-(2). *See also Hunt v. Pa. State Police of Com.*, 983 A.2d 627, 639 (Pa. 2009).

an abuse of discretion. An [a]buse of discretion occurs if the trial court renders a judgment that is manifestly unreasonable, arbitrary or capricious; that fails to apply the law; or that is motivated by partiality, prejudice, bias or ill-will.

*Sabol v. Allied Glove Corp.*, 37 A.3d 1198, 1200–01 (Pa. Super. 2011) (citations and quotation marks omitted).

"Pa.R.C.P. 4003.1 permits discovery 'regarding any matter, **not privileged**, which is relevant to the subject matter involved in the pending action. . . .'" *Commonwealth v. Kauffman*, 605 A.2d 1243, 1246 (Pa. Super. 1992) (emphasis added). CHRIA applies "to **persons** within this Commonwealth and to any agency of the Commonwealth or its political subdivisions which collects, maintains, disseminates or **receives criminal history record information**." 18 Pa.C.S. § 9103 (emphases added).

CHRIA defines "criminal history record information" as follows:

> Information collected by criminal justice agencies concerning individuals, and arising from the initiation of a criminal proceeding, consisting of identifiable descriptions, dates and notations of arrests, indictments, informations or other formal criminal charges and any dispositions arising therefrom. The term does not include intelligence information, investigative information or treatment information, including medical and psychological information, or information and records specified in section 9104 (relating to scope).

*Id.* at § 9102.

"Investigative information" is defined as follows: "Information assembled as a result of the performance of any inquiry, formal or informal,

- 10 -

into a criminal incident or an allegation of criminal wrongdoing and may include *modus operandi* information." ***Id.***

Section 9106(c)(4) of CHRIA provides:

> Investigative and treatment information shall not be disseminated to any department, agency or individual unless the department, agency or individual requesting the information is a criminal justice agency which requests the information in connection with its duties, and the request is based upon a name, fingerprints, modus operandi, genetic typing, voice print or other identifying characteristic.

18 Pa.C.S. § 9106(c)(4).

In ***Pa. State Police v. Grove***, 161 A.3d 877 (Pa. 2017), our Supreme Court

> granted discretionary review to consider whether video components of motor vehicle recordings (MVRs) created by appellant Pennsylvania State Police (PSP) are exempt from disclosure to the public as criminal investigative records under the Right-to-Know Law, 65 P.S. § 67.101–67.3104 (RTKL) or [CHRIA].
>
> \* \* \*
>
> CHRIA prevents the disclosure of "investigative information" to the public. 18 Pa.C.S. § 9106(c)(4).
>
> \* \* \*
>
> MVRs do not, generally, constitute *per se* protected "investigative information," and therefore the question of whether information captured on a particular MVR is to be excluded from public access under CHRIA must be determined on a case-by case basis.
>
> With respect to the specific MVRs at issue here, our inquiry is whether the video portions contain investigative information under CHRIA such that they should be exempt

from disclosure. As we have determined with respect to PSP's claims under the RTKL, we hold the Commonwealth Court did not err in concluding the CHRIA does not preclude disclosure either. The court correctly determined the only potential "investigative information" on these MVRs is contained in the audio portion of witness interviews on Trooper Thomas's MVR. As this potentially investigative aspect of the MVRs was ordered redacted, and neither PSP nor Grove challenged that order before this Court, we affirm the Commonwealth Court's decision on this issue.

*Id.* 161 A.3d at 880, 895-96.

In ***Coley v. Phila. Dist. Attorney's Office***, 77 A.3d 694 (Pa. Commw. 2013),[7] the Commonwealth Court opined:

Here, Coley requested witness statements compiled by the District Attorney's Office in the course of its criminal investigation. These statements are "investigative materials" exempt from disclosure under Section 708(b)(16)(ii) of the Right–to–Know Law. The witness statements also constitute "investigative information" which cannot be disseminated to a private individual and, therefore, are exempt from disclosure under Section 9106(c)(4) of [CHRIA].

*Id.* at 697. In ***Barros v. Martin***, 92 A.3d 1243 (Pa. Commw. 2014), the Commonwealth Court opined:

Thus, if a record, on its face, relates to a criminal investigation, it is exempt under the RTKL pursuant to Section 708(b)(16)(ii). Criminal investigative records remain exempt from disclosure under the RTKL even after the investigation is completed.

---

[7] We note that "[t]his Court is not bound by decisions of the Commonwealth Court. However, such decisions provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate." ***Md. Cas. Co. v. Odyssey Contracting Corp.***, 894 A.2d 750, 756 n.2 (Pa. Super. 2006) (citations omitted).

Also, a record is not considered a public record under Section 102 of the RTKL if it is "exempt under any other State or Federal Law," including the CHRIA. [Section 9106(c)(4) and Section 9102]

Thus, the records requested by Barros—*i.e.*, the criminal complaint file, forensic lab reports, any confession and record of polygraph of Quinones, the "Communication Center Incident Review," the "Internal Police Wanted Notice," "Reports on individual mistakenly apprehended," and three signed witness statements—are protected from disclosure under both the RTKL and the CHRIA as records "relating to . . . a criminal investigation" and "investigative information," respectively.

*Id.* at 1250 (some citations omitted).

In the case *sub judice*, the trial court opined:

Here, the WAEB AM 790 [Appellees] are seeking out the discovery of documents and information relating to the allegedly slanderous statement made by Villa concerning Martin's handling and prosecution of cases as the Lehigh County District Attorney. Because the truth of the statements made by Villa are at the forefront of this defamation lawsuit, the WAEB AM 790 [Appellees] need access to documents and information in the exclusive possession of Martin in order to properly prepare for trial and establish a defense.

\*　　\*　　\*

Discovery is the process by which the parties are able to gather and obtain information "regarding any matter, **not privileged**, which is relevant to the subject matter involved in the pending action" or is "reasonably calculated to lead to the discovery of admissible evidence." Pa.R.C.P. 4003.1(a)-(b). As articulated above, the information and documents requested by the WAEB 790 [Appellees] complies with Rule 4003.1 and the underlying purpose of discovery, to allow a fair trial on the merits. Thus, the

- 13 -

J-A31044-16

> WAEB 790 [Appellees'] motion to compel discovery[8] from [Appellant Martin] was granted.

Trial Ct. Op. at 4 (emphasis added). We disagree.

Appellees sought, *inter alia*, the following discovery:

> 2. All documents relating to the following persons from 2005 to the present:
>
>> a. Robert Edward LaBarre;
>>
>> b. James William Lauer;
>>
>> c. Amber Rae Washko;
>>
>> d. Jennifer Ann Gehringer;
>>
>> e. Christopher Stephen Squires;
>>
>> f. Gregory M. Williams;
>>
>> g. Joseph Carl Hoch.
>
> 3. All documents (including all evidence) relating to the following cases and/or matters from 2005 to the present:
>
>> a. ***Commonwealth v. Robert Edward LaBarre*** (*e.g.*, No. CP-39-CR-0003312-2006).
>>
>> b. ***Commonwealth v. James William Lauer*** (*e.g.*, Nos. CP-39-CR-0000721-2014; CP-39-CR-0002612-2010; CP-39-CR-0000632-2007; CP-39-CR-0003700-2003; CP-39-CR-2101205-1999; & CP-39-CR-0002907-1996).
>>
>> c. ***Commonwealth v. Amber Rae Washko*** (*e.g.*, No. CP-39-CR-0000418-2014).
>>
>> d. ***Commonwealth v. Jennifer Ann Gehringer*** (*e.g.*, No. CP-39-CR-0003519-2008).

---

[8] ***See*** R.R. at 438a.

- 14 -

e. ***Commonwealth v. Christopher Stephen Squires*** (*e.g.*, No. CP-39-CR-0005610-2006, CP-39-MD-0003211-2006, & CP-39-CR-0001658-2006).

f. ***Commonwealth v. Gregory M. Williams*** (*e.g.*, No. CP-39-CR-0002153-2009).

g. ***Commonwealth v. Joseph Carl Hoch*** (*e.g.*, No. CP-39-CR-0004810-2014).

4. [With reference to the above captioned cases, a]ll documents sufficient to identify all persons and/or entities (attorneys, staff, police, investigators, police departments, municipalities, judges, etc.) who were involved in the investigation, prosecution, handling and/or adjudication of the . . .cases or matters at any time[.]

\* \* \*

9. Any and all documents constituting or relating to any communications [Martin] sent to or received from third parties relating to the criminal prosecution of the following persons from 2005 to the present:

   a. Robert Edward LeBarre;

   b. James William Lauer;

   c. Amber Rae Washko;

   d. Jennifer Ann Gehringer;

   e. Christopher Stephen Squires;

   f. Gregory M. Williams[;]

   g. Joseph Carl Hoch[.]

10. All documents sufficient to show all cases involving DUI homicides and/or deaths caused by a drunk driver handled by [Martin] since 2005.

- 15 -

11. All documents sufficient to show all cases involving DUI homicides and/or deaths caused by a drunk driver handled by [Martin] since 2005 where you . . . did not pursue third degree murder charges.

12. Any and all documents constituting or relating to any of [Martin's] practices, policies and/or procedures since 2000 relating to:

    a. the prosecution of cases involving DUI homicides and/or deaths caused by a drunk driver;

    b. the use of third degree murder charges in the prosecution of cases involving DUI homicides and/or deaths caused by a drunk driver;

    c. communicating with victim's families in connection with prosecution of cases involving DUI homicides and/or deaths caused by a drunk driver;

    d. permitting criminal defendants out on bail to leave the country;

    e. permitting criminal defendants in jail pending trial to go on furlough for personal or other reasons.

R.R. at 339a-340a, 342a-343a.

Instantly, the trial court clearly found that the information was relevant. However, it did not proceed further to address Martin's or the Office's claims of privilege. Indeed, there is no indication that the trial court reviewed any materials to render a determination as to whether CHRIA or a separate evidentiary privilege would apply. Thus, we find the trial court abused its discretion in granting the motion to compel discovery without a more full consideration of whether the matters contained in the files are

protected from disclosure under CHRIA or another evidentiary privilege.[9] Therefore, we are constrained to remand this matter for further consideration of this issue. The trial court may consider any further arguments by the parties after which it shall conduct an *in camera* review before determining whether the information sought may be disclosed.

Next, Martin argues the trial court "erred by improperly compelling production of confidential documents and information related to disciplinary complaints to the Pennsylvania Disciplinary Board which resulted in no action" against him. Martin's Brief at 25.

As a prefatory matter, we consider whether the order to produce confidential documents and information related to disciplinary complaints to the Pennsylvania Disciplinary Board is appealable as a collateral order. "Pennsylvania courts have held that discovery orders involving potentially confidential and privileged materials are immediately appealable as collateral to the principal action." ***Berkeyheiser v. A-Plus Investigations, Inc.***, 936 A.2d 1117, 1123–24 (Pa. Super. 2007). We find the order satisfies Rule 313's three-pronged test. ***See Rae***, 977 A.2d at 1124-25 (Pa. 2009).

Martin argues that "these confidential documents relating to disciplinary complaints are protected from discovery by the Pennsylvania

---

[9] Neither Martin nor the Office submitted the materials under seal for review by this Court.

Rules of Disciplinary Enforcement and the Pennsylvania Disciplinary Board

Rules." Martin's Brief at 25.

Appellees served interrogatories seeking information about disciplinary

complaints against Martin. R.R. at 454a. Specifically, interrogatory 28

provided:

> a. Have you ever been the subject of an ethics proceeding or complaint filed with any attorney disciplinary board or organization? If the answer is yes, please state all facts relating to the proceeding or complaint, including the name(s) of the persons bringing or filing the proceeding or complaint and the outcome or result;
>
> b. Have you ever been the subject to discipline or sanctions by any attorney disciplinary board or organization? If the answer is yes, please state all facts relating to the discipline or sanctions;
>
> c. Identify all documents which record, relate or refer to the matters inquired of in this Interrogatory.

*Id.* at 454a-455a.

Pennsylvania Rule of Disciplinary Enforcement 209 provides:

"Complaints submitted to the Board or Disciplinary Counsel shall be

confidential **unless the matter results in the filing of formal charges**."

Pa.R.D.E. 209(a) (emphasis added). Rule 402 provides:

> (a) Except as provided in subdivisions (b), (d) and (k), all proceedings under these rules shall be open to the public after:
>
> (1) the filing of an answer to a petition for discipline;
>
> (2) the time to file an answer to a petition for discipline has expired without an answer being filed; or

(3) the filing and service of a petition for reinstatement.

(4) the Board has entered an Order determining a public reprimand.

(b) Notwithstanding subdivision (a), an informal proceeding under these rules in which it is determined that private discipline should be imposed but that subsequently results in the filing of formal charges shall not be open to the public until or unless the Supreme Court enters its order for the imposition of public discipline.

(c) Until the proceedings are open under subdivision (a) or (b), all proceedings involving allegations of misconduct by or disability of an attorney shall be kept confidential unless:

(1) the respondent-attorney requests that the matter be public, or waives confidentiality for a particular purpose specified in writing;

(2) the investigation is predicated upon a conviction of the respondent-attorney for a crime or reciprocal discipline;

(3) the proceeding is based on an order of temporary suspension from the practice of law entered by the Court pursuant to Enforcement Rule 208(f)(1) (relating to emergency temporary suspension orders and related relief);

(4) in matters involving alleged disability, the Supreme Court enters its order transferring the respondent-attorney to inactive status pursuant to Enforcement Rule 301 (relating to proceedings where an attorney is declared to be incompetent or is alleged to be incapacitated); or

(5) there is a need to notify another person or organization, including the Lawyers' Fund for Client Security, in order to protect the public, the administration of justice, or the legal profession.

(d) This rule shall not be construed to:

(1) Deny access to relevant information at any point during a proceeding under these rules to:

(i) authorized agencies investigating the qualifications of judicial candidates,

(ii) the Judicial Conduct Board with respect to an investigation it is conducting,

(iii) other jurisdictions investigating qualifications for admission to practice;

(iv) law enforcement agencies investigating qualifications for government employment;

(v) lawyer disciplinary enforcement agencies in other jurisdictions investigating misconduct by the respondent-attorney; or

(vi) the Pennsylvania Lawyers Fund for Client Security Board investigating a claim for reimbursement arising from conduct by the respondent-attorney.

(2) Require Disciplinary Counsel to refrain from reporting to law enforcement authorities the commission or suspected commission of any criminal offense or information relating to a criminal offense.

(3) Prevent the Pennsylvania Lawyers Fund for Client Security from utilizing information obtained during any investigation to pursue subrogated claims.

*    *    *

(k) If a formal proceeding results in the imposition of private discipline or dismissal of all the charges, the proceeding shall cease to be open to the public when the decision to impose private discipline or dismiss the charges becomes final, unless the respondent-attorney requests that the record of the proceeding remain open to the public.

Pa.R.D.E. 402(a)-(d), (k).

In ***Attorney T. v Office of Disciplinary Counsel***, 547 A.2d 350 (Pa.

1988), the Pennsylvania Supreme Court opined:

> The **confidentiality** of attorney disciplinary proceedings is well established and serves a vital function in assisting legitimate governmental processes. ***McLaughlin v. Philadelphia Newspapers, Inc.***, [ ] 348 A.2d 376 (Pa. 1975). ***McLaughlin*** involved an action brought by a newspaper to vacate an impoundment order with respect to disciplinary proceedings regarding a private attorney who was later appointed to public office. The newspaper sought permission to have its personnel inspect and photograph records of the disciplinary proceeding. This Court held that it was not a violation of freedom of the press to deny the newspaper access to court records of disciplinary proceedings concerning matters which were non-criminal and non-governmental in nature, where the proceedings were conducted with the expectation of all concerned that unless public discipline were imposed the proceedings would remain confidential. An impoundment order was in accordance with standard practice and the lawyer involved desired that confidentiality be maintained. ***Id.***, [ ] at 382–383.

> The ***McLaughlin*** Court explained the rationale for **confidentiality in disciplinary proceedings** as required by Pennsylvania Rule of Disciplinary Enforcement 17–23, which was amended and redesignated as Pa.R.D.E. 402:

>> This rule, declaratory of prior practice in Pennsylvania, reflects the considered judgment that there is nothing to be gained and much to be lost, where an attorney's reputation and livelihood are concerned, by opening to the public the record of proceedings concerning allegations of professional misconduct which are ultimately found to be groundless. Additionally, even where the charges brought against a lawyer have merit, it is often the case that the misconduct demands discipline of no greater magnitude than private reprimand. As a

- 21 -

primary objective of such a minor penalty is the rehabilitation of the lawyer (in addition, of course, to the protection of the public interest), confidentiality may be considered essential to ensure that rehabilitative efforts are not thwarted by disclosures which may be prejudicial. Thus, when McLaughlin as a private practitioner appeared before the court of common pleas to answer allegations of a non-criminal nature concerning his private practice, he did so with the expectation, fully warranted, that **unless public discipline were imposed, i.e. public censure, suspension or disbarment, the proceedings would remain confidential**.

*Id.*, [ ] at 381 (footnote omitted).

*Attorney T.*, 547 A.2d at 352 (emphases added).

The trial court in the instant case baldly asserts "Martin's disciplinary history is highly relevant and thus discoverable as his ethics are a pertinent issue in this case." Trial Ct. Op. at 4. In the case *sub judice*, no public discipline was imposed against Martin. Complaints submitted to the Board or Disciplinary Counsel are deemed confidential unless public discipline is imposed. *See* Pa.R.D.E. 209(a); 402(a)-(d), (k); *Attorney T.*, 547 A.2d at 352. Thus, absent any indication Martin was subject to the filing of charges or public discipline had been imposed, the trial court erred in granting the discovery motion with respect to Martin's disciplinary history. *See* Pa.R.D.E. 209(a); 402(a)-(d), (k); *Attorney T.*, 547 A.2d at 352.

Lastly, Martin contends the trial court erred by ordering him to produce confidential and private documents pertaining to his tax returns,

income and finances, notwithstanding the fact that he is not asserting a claim for loss of income or lost wages. Martin's Brief at 29.

As a prefatory matter, we consider whether the trial court's order compelling production of Appellant Martin's tax returns and financial information is appealable as of right as a collateral order. In ***J.S. v. Whetzel***, 860 A.2d 1112 (Pa. Super. 2004), this Court addressed the issue of whether an order requiring the disclosure of federal income tax forms was reviewable as a collateral order. The ***Whetzel*** Court held that it was a collateral order, as the three pronged test of Rule 313 was satisfied. This Court opined:

> Instantly, the August 2003 order from which [the appellant] appeals denied him protection of his 1099 forms. The admissibility of [his] 1099 forms, whether on procedural or evidentiary grounds, may be addressed without analyzing [the appellant's] alleged negligence in the automobile accident. Thus, the issue of discovering [the appellant's] 1099 forms is separate from the merits of [the p]laintiffs' personal injury action. Turning to the second prong, we note the current order requires [the appellant] to submit every 1099 form he received from any insurance company and/or attorney from 1999 through 2002. We agree [his] privacy interest in his income information raises a sufficiently important public policy concern. Finally, we note the instant order requires [the appellant] to immediately produce the requested 1099 income information. Any privacy interest [the appellant] may have in the 1099 forms will be irreparably violated if he complies with the order and produces the documents. Thus, the third prong of irreparable loss of claim is met. Accordingly, we conclude the present trial court order is a collateral order from which [the appellant] properly appeals.

***Id.*** at 1117 (citations omitted). Analogously, we find the order compelling the production of Appellant Martin's tax returns and financial information is appealable as a collateral order. ***See id.*** The order satisfies Rule 313's three-pronged test. ***See id.***; ***see also Rae*** 977 A.2d at 1124-25 (Pa. 2009).

Martin argues that because he "has no intention of presenting any claim for economic damages related to loss of wages or income at trial, private and confidential documents and information relating to his income and finances are not relevant to any of the issues in this case and should not be subject to discovery." Martin's Brief at 30. Martin contends that his "income and financial condition is wholly unrelated to his reputation." ***Id.*** at 31.

Appellees requested, *inter alia*, the following documents:

> 13. Any and all documents relating to the damages alleged in [Martin's] Complaint [ ], including but not limited to all documents related to the following:
>
> a. Harm or damage to [Martin's] "**reputation**";
>
> b. Exposure of [Martin] to "public contempt, hatred and ridicule";
>
> c. Harm or damage to [Martin's] "dignity, respect, esteem and effectiveness as a lawyer and District Attorney";
>
> d. "Emotional distress, mental anguish, embarrassment and humiliation" suffered by [Martin]; and
>
> e. "[I]nterfere[nce] with [Martin's] personal, professional and family life."

14. Any and all documents relating to any aspect of Martin's **reputation** as it existed:

a. Before the Statement at Issue; and/or

b. After the Statements at Issue.

R.R. at 343a (emphases added).

Appellees' requested the following discovery regarding Martin's income and finances as follows:

Interrogatory No. 3:

a. State your gross income for each of the calendar years 2010 to present and all sources of such income; and

b. Identify all documents which record, relate or refer to the matters inquired of in this Interrogatory.

Document Request No. 17: Any and all documents showing or reflecting the amounts (monetary or otherwise) earned or received by [Martin] since 2010, including but not limited to the following:

a. foreign, federal and state income tax returns;

b. balance sheets;

c. income statements.

*Id.* at 455a-456a (citations omitted).

In Count I of his complaint against Appellees, Martin seeks damages for loss of reputation based upon Appellee Villa's alleged false and defamatory statements. R.R. at 23a-25a; *id.* at A20-A22. Martin avers:

WHEREFORE, Martin demands judgment against Villa for compensatory damages in excess of compulsory arbitration limits, exclusive of interest and costs, and

punitive damages in an amount which will punish the defendant and deter him and other similarly situated from the commission of like acts in the future, and such other legal and equitable relief as the [c]ourt deems appropriate.

*Id.* at 25a.

In Count II of the complaint, Martin asserts defamation claims against Appellees, Walsh, iHeartCommunications, Inc., a/k/a/ Clear Channel Communications, Inc., Capstar TX LLC, and iHeartMedia, Inc. a/k/a CC Media Holdings, Inc. for publishing Villa's false and defamatory statements concerning him. *Id.* at 25a-26a. Martin avers in the complaint that "Walsh and Clear Channel knew the false and defamatory statements, innuendo and implications would damage the reputation and cause harm to Martin but nevertheless continued to broadcast and republish such false, defamatory and harmful statements, innuendo and implications." *Id.* at 26a; *id.* at A23. He seeks damages against Appellees

jointly and/or severally, for compensatory damages in excess of compulsory arbitration limits, exclusive of interest and costs, and punitive damages in an amount which will punish the defendants and deter them and other similarly situated from the commission of like acts in the future, and such other legal and equitable relief as the [c]ourt deems appropriate.

*Id.* at 26a; *id.* at A23.

In *Sprague v. Walter*, 656 A.2d 890 (Pa. Super. 1995), in a defamation case, judgment was entered in favor of Sprague and against Philadelphia Newspapers, Inc. ("PNI"). *Id.* at 896. In *Sprague*,

> PNI argue[d] that the trial judge erred by refusing to compel Sprague to turn over copies of his tax returns to PNI. PNI contends that Sprague's income was relevant to his claim of loss of reputation. The trial court held that Sprague's tax returns were irrelevant because Sprague **was not seeking damages for economic loss, but for loss of reputation**.

*Id.* at 914 (emphasis added). This Court agreed the tax returns were not discoverable. *Id.*

In the case *sub judice*, the trial court summarily stated:

> Also, Martin's disciplinary history is highly relevant and thus discoverable as his ethics are a pertinent issue in this case. The same holds true with regard to Martin's financials in terms of determining any harm experienced by Martin by the alleged slanderous statements.

Trial Ct. Op. at 4.

In the instant case, as in **Sprague**, Martin was not seeking damages for economic loss, but for loss of reputation. **See Sprague**, 656 A.2d at 914. Therefore, Martin's income statements are not discoverable. **Id.** We find the trial court erred in ordering the production of documents related to Martin's income since 2010. **See Sabol**, 37 A.3d at 1200-01.

In sum, we conclude that the trial court abused its discretion when failing to consider CHRIA and the other privileges raised by the parties and vacate the order to the extent it purported to overrule the objections by Martin and the Office. The trial court shall conduct further proceedings to determine the applicability of CHRIA or other privileges raised by the parties, including, but not limited to, the conduct of an *in camera* review of the files.

We further conclude that the trial court erred in granting discovery of disciplinary complaints filed against Martin and Martin's income statements and reverse those aspects of the order.

Order vacated in part and reversed in part. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/15/2017